**2025-1433**

---

# United States Court of Appeals for the Federal Circuit

---

BRIAN STREIT,

Plaintiff-Appellant

v.

PRIVATE IDENTITY, LLC, fka
Inference Holdings LLC,

Defendant-Appellee

---

Appeal from the United States District Court for the District of Maryland
in 8:23-cv-02031-SAG,
Judge Stephanie A. Gallagher

---

**CORRECTED BRIEF OF PLAINTIFF-APPELLANT BRIAN STREIT**

JAMES S. LISKOW
DeCARO, DORAN, SICILIANO,
GALLAGHER & DeBLASIS, LLP
17251 Melford Boulevard, Suite 200
Bowie, Maryland 20715
Tel: (301) 352-4950
Fax: (301) 352-8691
jliskow@decarodoran.com
*Counsel for Appellant Brian Streit*

April 29, 2025

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2025-1433

**Short Case Caption** Streit v. Private Identity, LLC

**Filing Party/Entity** Brian Streit

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/27/2025

Signature: /s/ James S. Liskow

Name: James S. Liskow

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☑ None/Not Applicable |
| Brian Streit | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... ii

STATEMENT OF RELATED CASES .......... 1

JURISDICTIONAL STATEMENT .......... 1

STATEMENT OF THE ISSUES .......... 1

STATEMENT OF THE CASE .......... 2

STATEMENT OF FACTS .......... 4

SUMMARY OF THE ARGUMENT .......... 7

STANDARD OF REVIEW .......... 8

ARGUMENT .......... 9

A. The District Court erred in applying a nonexistent federal common law as opposed to Texas law which was contrary to the express language of 35 U.S.C. § 261 that patents and patent applications have the attributes of personal property and longstanding precedent that ownership and assignments are matters of state law .......... 9

B. Application of Texas law requires a much different result .......... 14

C. The District Court erred in holding that all of the patents concerned the same subject and derived from the same original invention, which was directly contrary to the allegations in the Amended Complaint and Dr. Streit's Affidavit .......... 21

CONCLUSION AND RELIEF SOUGHT .......... 22

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abraxis Bioscience, Inc. v. Navinta LLC,*
625 F.3d 1359 (Fed. Cir. 2010) ....................................................13, 21

*Amaro v. US Bank Nat'l Ass'n*,
2013 U.S. Dist. LEXIS 40798 (N.D.Tex. Mar. 22 2013).................. 19

*Bowen v. Willard*,
203 Minn. 289 (1938) ......................................................................17

*Burges v. Mosley*,
304 S.W.3d 623 (Tex. App. 2010).....................................................14

*Collier v. Greenbrier Developers, LLC*,
358 S.W.3d 195 (Tenn. App. 2009)..............................................17, 18

*Core Optical Techs., LLC v. Nokia Corp.*,
102 F.4th 1267 (Fed. Cir. 2024) .......................................................13

*El Paso Healthcare Sys., LTD v. Molina Healthcare of New Mexico, Inc.*,
683 F. Supp. 2d 454 (W.D. Tex. 2010)...............................................15

*Enovsys LLC v. Nextel Communs., Inc.*,
614 F.3d 1333 (Fed. Cir. 2010) ........................................................13

*Euclid Chem. Co. v. Vector Corrosion Techs., Inc*,
561 F.3d 1340 (Fed. Cir. 2009) ........................................................13

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.,*
995 F.2d 425 (3d Cir. 1993) ..............................................................12

*In re Brager*,
39 B.R. 441 (Bankr. E.D. Pa. 1984)....................................................18

*Keller v. Bass Pro Shops, Inc.*,
15 F.3d 122 (8th Cir. 1994) ...................................... 4, 7, 9, 10, 11, 20

*Minnesota Mut. Life Ins. Co. v. Anderson,*
504 N.W.2d 284 (Minn 1993) ......................................................16, 17

*Mobile Equity Corp. v. Walmart Inc.*,
2022 U.S. Dist. LEXIS 162895 (E.D. Tex. Aug. 23, 2022)................14

*Nebco & Assocs. v. United States*,
23 Cl. Ct. 635 (Cl. Ct. 1991)................................................................11

*Onyekwere v. Bank of Am., N.A.*,
2014 U.S. Dist. LEXIS 35598 (N.D. Tex. Mar. 18 2014)...................19

*Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*,
323 S.W.3d 203 (Tex.App. – El Paso 2010) .......................................19

*Pogo Res., LLC v. St. Paul Fire & Marine Ins. Co.*,
2022 U.S. Dist. LEXIS 12016 (N.D.Tex. Jan. 24, 2022)................... 19

*Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.,*
284 F.3d 1323 (Fed. Cir. 2002) ...........................................................13

*Short v. Hartman*,
87 F.4th 593 (4th Cir. 2023) ...............................................................8, 9

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*,
873 F.3d 1364 (Fed. Cir. 2017) .............................................................8

*Stark v. Advanced Magnetics*,
119 F.3d 1551 (Fed. Cir. 1997) ...........................................................12

*Ubisoft Entm't, S.A. v. Yousician Oy*,
814 Fed. Appx. 588 (Fed. Cir. 2020) ............................................9, 22

*Wallach v. Eaton Corp.*,
837 F.3d 356 (3d Cir. 2016) .......................................................10, 12

**Rules**

28 U.S.C. § 1295........................................................................ 1, 10

28 U.S.C. § 1331.............................................................................. 1

28 U.S.C. § 1338.............................................................................. 1

28 U.S.C. § 1367.............................................................................. 1

28 U.S.C. § 2201.............................................................................. 1

28 U.S.C. § 2202.............................................................................. 1

35 U.S.C. § 256.................................................................... 1, 2, 4, 12

35 U.S.C. § 261........................................................................ 1, 9, 13

35 U.S.C. § 262................................................................................ 1

F.R.C.P. § 12(b)(6) ........................................................................9, 21

F.R.C.P. § 12(c)..............................................................................1, 8

**Other Authorities**

Restatement (Second) of Contracts § 332.................................10, 11, 15, 16, 18, 20
Farnsworth, *Contracts* § 11.3 (3d ed. 1999) .....................................................15, 16
Farnsworth, *Contracts* § 11.6 (3d ed. 1999) .....................................................16, 18

## STATEMENT OF RELATED CASES

None.

## JURISDICTIONAL STATEMENT

This Honorable Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1295 which provides that the United States Court of Appeals for the Federal Circuit "shall have exclusive jurisdiction — (1) of an appeal from a final decision of a district court of the United States… in any civil action arising under, or in any civil action in which a party has asserted a compulsory counterclaim arising under, any Act of Congress relating to patents…" The District Court had subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338 and 35 U.S.C. §§ 256, 261, and 262 and 28 U.S.C. §§ 2201 and 2202 (the "Declaratory Judgment Act") and further had supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

## STATEMENT OF THE ISSUES

1. Did the District Court err in granting Defendant-Appellee's Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. Pro. 12(c) *sua sponte* holding that a purported Assignment was enforceable while ignoring and failing to apply Texas law (where the document was signed) and instead relying on *dicta* from an Eighth Circuit opinion which should have never been decided as it lacked subject matter jurisdiction?

2. Was the purported Assignment void or voidable for lack of consideration or its equivalent?

3. Did the District Court err in failing to provide any sort of analysis, or, to conduct any sort of evidentiary hearing in deciding that numerous patents which were not mentioned in the purported Assignment were derived from the original set of inventions, in direct contradiction to what was alleged in the Amended Complaint?

## STATEMENT OF THE CASE

This matter is an action to correct inventorship of various patents brought pursuant to 35 U.S.C § 256 with respect to fifteen United States patents. Appellant, Dr. Brian Streit, Ph.D., along with his father, Mr. Scott Streit, are co-inventors of solutions to fully homomorphic encryption ("FHE") as well as helper networks. FHE is encryption whereby data can be accessed and manipulated while it remains encrypted. This allows a user to interact with such data without having to unencrypt it first and encrypt it again after use. Helper networks are computer programs which evaluate the validity of data, which can include biometric data. Helper networks work independently of fully homomorphic encryption and can be utilized with unencrypted data and could be used locally and without transmission of biometric data.

Subsequent to the original invention, the Defendant-Appellee, Private Identity, LLC, a company in which Mr. Scott Streit had an interest, filed four (4) patent applications related to fully homomorphic encryption. These Patent Applications did not list Dr. Brian Streit as an inventor.

On April 17, 2018, *after* those four (4) original Patent Applications were filed, Dr. Streit signed a document which purported to be an Assignment of his rights to those Patent Applications and ". . . any and all inventions and designs which are disclosed in the paper entitled 'Privacy-Enabled Biometric Search' and to any patent application relating to any matter relating to Open Inference Holdings LLC," and named the four (4) individual applications. The purported Assignment stated that it was the product of consideration. This was untrue as Dr. Streit had not received any consideration for signing the purported Assignment.

Dr. Streit, filed this action in the United States District Court for the District of Maryland on July 27, 2023. He subsequently filed an Amended Complaint on November 21, 2023. On December 5, 2023, Private Identity filed a Motion to Dismiss the Amended Complaint. This Motion was denied on July 18, 2024. On September 19, 2024, Private Identity filed a Motion for Judgment on the Pleadings which the District Court granted on January 21, 2025, entering judgment for Private Identity. Dr. Streit filed a timely Notice of Appeal to this Honorable Court on January 31, 2025.

In granting the Motion for Judgment on the Pleadings the District Court applied federal common law, despite the fact that Private Identity had expressly agreed that Texas law controlled, as that was where the purported assignment was signed. The Court further relied on *dicta* from a case which should have never been

decided as it was without subject matter jurisdiction, *Keller v. Bass Pro Shops, Inc.*, 15 F.3d 122 (8th Cir. 1994).

The District Court further applied the Assignment to each of the fifteen (15) patents at issue, even though eleven of those patents were not in existence at the time the purported Assignment was signed, and ignoring the express allegations in the Amended Complaint that:

> That the patent applications filed after the alleged Assignment Agreement as well as the revisions and amendments to the original patent applications were not nor could they have been contemplated at the time the Assignment Agreement was signed, so that even if such Assignment Agreement was valid (which it is not) the inventions for which said patent applications and amendments to the original patent applications exceeded the scope of such document.

The District Court did not conduct an evidentiary hearing, nor did it provide any analysis in its Opinion. Instead, the District Court held that each of the inventions were derived from the original invention and that "Plaintiff clearly alleges, in the Amended Complaint, that all fifteen of the patents at issue in this case derive from the original set of inventions. ECF 28 ¶¶ 28–38."

## STATEMENT OF FACTS

This matter is an action to correct inventorship of various patents brought pursuant to 35 U.S.C § 256 with respect to fifteen United States patents. Appellant, Dr. Brian Streit, Ph.D., along with his father, Mr. Scott Streit, are co-inventors of solutions to fully homomorphic encryption as well as helper networks. Fully

homomorphic encryption is encryption whereby data can be accessed and manipulated while it remains encrypted. This allows a user to interact with such data without having to unencrypt it first and encrypt it again after use. Helper networks are computer programs which analyze encryption data and account for errors.

Subsequent to the original invention, the Defendant-Appellee, Private Identity, LLC, a company in which Mr. Scott Streit had an interest, filed four (4) patent applications related to fully homomorphic encryption, Patent Application Serial Nos. 15/914,969, 15/914,942, 15/914,436, and 15/914,562. These Patent Applications did not list Dr. Streit as an inventor.

On April 17, 2018, *after* those four (4) original Patent Applications were filed, Dr. Streit signed a document which purported to be an Assignment of his rights to:

> . . . any and all inventions and designs which are disclosed in the paper entitled 'Privacy-Enabled Biometric Search' and to any patent application relating to any matter relating to Open Inference Holdings LLC, including the patent applications for United States Letters Patent filed in the United States Patent and Trademark Office on March 7, 2018 under No. 15/914,436, 15/914,562, 15/914,942, and/or 15/914,969 bearing Attorney Docket No. 00403.70000USOO, and entitled SYSTEMS AND METHODS FOR PRIVACY-ENABLED BIOMETRIC PROCESSING, . . .

Appx627 The purported Assignment stated that it was the product of consideration. This was untrue. Dr. Streit never received any consideration for signing the purported Assignment. Appx22, Appx24-25 He was never employed by Private Identity, nor did he receive any kind of remuneration for his work in developing the

inventions nor for purportedly assigning his rights to his inventions to Private Identity. (Id.).

In responding to Private Identity's Motion for Judgment on the Pleadings, Dr. Streit provided an Affidavit, attesting to, among other things, that he along with his father invented fully homomorphic encryption in 2017 and 2018, and providing an explanation of the inventions and how they differ from one another. Appx673 He explained that helper networks are a separate invention from fully homomorphic encryption and that:

> The purpose of the helper networks is to evaluate the validity of data, including biometric data. For example, helper networks determine if the biometric is too blurry or if an image is of a live biometric or being replayed. These helper networks work independently of FHE, and, in fact, could be utilized with unencrypted data and could be used locally and without transmission of biometric data.

Appx677 He further attested that:

> My paper, "Privacy-Enabled Biometric Search", does not solve FHE and further was not the basis for any of the inventions in any of the patents at issue in this matter. Moreover, "helper networks" are not discussed in my paper "Privacy-Enabled Biometric Search" paper and are in no way contemplated by the language in the purported Assignment. These inventions came much later in 2019.

(Id.). Dr. Streit attested that what Private Identity sought and received patents in regard to his "work [that] far exceeded what was purportedly assigned in the Assignment." Appx676

Dr. Streit attested that he received no consideration for signing the purported Assignment, and that he was never employed by Private Identity Appx675 Instead, Michael Pollard, one of the owners of Private Identity, contacted him and told him that his assignment of patent rights was "holding up the patent filing process" and that it would be easier if Dr. Streit was not listed on the patent applications. Appx676 Mr. Pollard further stated that it would be "bad for" Dr. Streit's career if he were listed on the applications because it would appear to be nepotism and it would only serve to "embarrass" Dr. Streit. (Id.). Mr. Pollard instructed Dr. Streit not to discuss their discussion with anyone, including his father. (Id.)

## SUMMARY OF THE ARGUMENT

In granting the Motion for Judgment on the Pleadings the District Court applied what can only be described as Federal common law. The District Court did this despite the fact that Private Identity had expressly agreed that Texas law controlled, as that was where the document was signed. Appx716, Appx719, Appx721 In doing so the District Court further relied on *dicta* from a case which should never have been decided as the Eighth Circuit was without subject matter jurisdiction, *Keller v. Bass Pro Shops, Inc.*, 15 F.3d 122 (8th Cir. 1994).

The District Court applied the Assignment to each of the fifteen (15) patents at issue, despite the fact that they were not in existence at the time the purported

Assignment was signed and ignoring the express allegations in the Amended Complaint that:

> That the patent applications filed after the alleged Assignment Agreement as well as the revisions and amendments to the original patent applications were not nor could they have been contemplated at the time the Assignment Agreement was signed, so that even if such Assignment Agreement was valid (which it is not) the inventions for which said patent applications and amendments to the original patent applications exceeded the scope of such document.

Appx26 The District Court did not conduct an evidentiary hearing, nor did it provide any analysis in its Opinion. Instead, the District Court held that each of the inventions were derived from the original invention and that "Plaintiff clearly alleges, in the Amended Complaint, that all fifteen of the patents at issue in this case derive from the original set of inventions. ECF 28 ¶¶ 28–38." Appx26

**STANDARD OF REVIEW**

The Federal Circuit reviews "a district court's grant of judgment on the pleadings under the regional circuit's law." *Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1367 (Fed. Cir. 2017). The District Court in this matter was in Maryland which is in the Fourth Circuit which reviews "*de novo* a district court's ruling on a Rule 12(c) motion for judgment on the pleadings." *Short v. Hartman*, 87 F.4th 593, 603 (4th Cir. 2023)(citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). The Fourth Circuit applies the same standard as it would when ruling on a motion filed pursuant to Fed. R. Civ. Pro. 12(b)(6). This

standard requires the Court to accept all facts pled in the complaint as true and "'draw all reasonable inferences in favor of the plaintiff.'" *Id.* (citing *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)); *Ubisoft Entm't, S.A. v. Yousician Oy*, 814 Fed. Appx588, Appx590 (Fed. Cir. 2020). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts to state a claim that is "plausible on its face" which is less than probability, but more than a sheer possibility. *Short*, 87 F.4th at 603 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

## ARGUMENT

### A. The District Court erred in applying a nonexistent federal common law as opposed to Texas law which was contrary to the express language of 35 U.S.C. § 261 that patents and patent applications have the attributes of personal property and longstanding precedent that ownership and assignments are matters of state law

In holding that the Assignment did not require consideration, the District Court both ignored the language of the purported Assignment itself, and misconstrued the law. Importantly, Private Identity never argued that Texas law should not be applied. To the contrary, Private Identity, like Dr. Streit, both asserted that Texas law applied, but, Private Identity as discussed below, believed incorrectly that Texas law did not require consideration for an assignment.

The District Court relied on *Keller v. Bass Pro Shops, Inc.*, 15 F.3d 122, 125 (8th Cir. 1994) citing it as authority for adopting Restatement (Second) of Contracts

§ 332 which the District Court held stands for the proposition that "an effective voluntary assignment of a patent need not be supported by consideration."

Firstly, *Keller* was not precedential and should not have been afforded any persuasive weight as it should never have been decided as the court lacked subject matter jurisdiction. *Keller*, an Eighth Circuit opinion, concerned an assignment of a patent and it is this Honorable Court, not the other Circuits, which has "exclusive jurisdiction" over appeals from District Courts over "any civil action arising under, or in any civil action in which a party has asserted a compulsory counterclaim arising under, any Act of Congress relating to patents…" 28 U.S.C. § 1295. Therefore, the Eighth Circuit was without subject matter jurisdiction to even decide the matter, should be ignored.

Second, the District Court misinterpreted *Keller* which did not hold that whether an assignment of a patent is effective is subject to federal common law. To the contrary, the *Keller* Court looked to Arkansas law, where "the recitation of consideration estops the grantor of a deed from claiming that it was executed without consideration." 15 F.3d at 124. As discussed below, Texas law differs from Arkansas law.

Instead, Private Identity incorrectly cited *Keller* for a general description of assignments and thereafter looked to other cases cited in the Keller opinion. Appx721(" Texas courts join *Keller, Nebco, Wallach, Cascades,* and *Gore* in citing

Restatement § 332 for the proposition that "an assignment is not void for lack of consideration."). In addition to the holding above, the *Keller* Court also held that, in the alternative, the assignment was "a completed voluntary conveyance and that it therefore is not subject to attack for lack of consideration." *Id*. The *Keller* Court relied on *Nebco & Assocs. v. United States*, 23 Cl. Ct. 635 (Ct. Cl. 1991), which concerned a mortgage and applied Nebraska law.

Third, Restatement (Second) of Contracts § 332 does not, as *Keller* and the District Court posit, stand for the proposition that "an effective voluntary assignment of a patent need not be supported by consideration." To the contrary, Restatement (Second) of Contracts § 332 concerns the "Revocability of Gratuitous Assignments." Here, Private Identity expressly and repeatedly asserted that the purported Assignment was not gratuitous. Appx697 ("Donative Intent Is Irrelevant Because the Parties Agree That Plaintiff's Assignment Was Not Gratuitous") Appx723 ("The Gift Cases Cited by Plaintiff Are Not Relevant to Whether Plaintiff's Patent Assignment Is Valid").

Fourth, the *Keller* Court explained that in that case "the assignment is evidenced by a written instrument, . . . , that fully complies with the requirements of 35 U.S.C. § 261 (1988)." *Keller,* 15 F.3d at 123-124. Here, Private Identity did not and could not advance such an argument because 35 U.S.C. § 261 speaks to patent and patent applications. Nowhere in the Statute, nor in Title 35, is an inventor

permitted to assign a patent, patent application or an interest in the same without including his or her name on the patent or patent application.[1]

Here, Dr. Streit was *never* included in the patent application and is not named in the patent. As such, the purported Assignment by its own terms invalidated the patent. 35 USCS § 256(b)(" Patent valid if error corrected. The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section.").

Fifth, the District Court's application of the Third Circuit's opinion in *Wallach v. Eaton Corp.*, 837 F.3d 356 (3d Cir. 2016), an antitrust case, is contrary to express statutory language and longstanding precedence. *Wallach* concerned an assignment of antitrust claims. The *Wallach* Court, relying on its earlier decision in *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.,* 995 F.2d 425, 438 (3d Cir. 1993), explained that it would apply a federal common law because "'assignments of antitrust claims cannot appropriately be left to determination under possibly differing state law standards'" *Wallach*, 837 F.3d at 366-367.

---

[1] To the contrary, a patent that does not name all of the inventors (nonjoinder) is necessarily invalid unless such error can be corrected by a District Court pursuant to 35 U.S.C. § 256. *Stark v. Advanced Magnetics*, 119 F.3d 1551, 1557 (Fed. Cir. 1997). Here, the patent applications for the original patents, which omitted Dr. Streit, were already filed when the purported Assignment was signed.

The same is not true here. 35 U.S.C. § 261 expressly begins "Subject to the provisions of this title, patents shall have the attributes of personal property." 35 U.S.C. § 261. Ownership of personal property is a matter of state law. *See Euclid Chem. Co. v. Vector Corrosion Techs., Inc*, 561 F.3d 1340, 134 (Fed. Cir. 2009)(quoting *Mars, Inc. v. Coin Acceptors, Inc*., 527 F.3d 1359, 1370 (Fed. Cir. 2008)("Construction of patent assignment agreements is a matter of state contract law."); *Enovsys LLC v. Nextel Communs., Inc.*, 614 F.3d 1333, 1342 (Fed. Cir. 2010)*("*Who has legal title to a patent is a question of state law."); *Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.,* 284 F.3d 1323, 1327, 1329, (Fed. Cir. 2002)("In general, the Supreme Court and this court have turned to state law to determine whether there is contractual 'authority' to practice the invention of a patent. Thus, the interpretation of contracts for rights under patents is generally governed by state law.")("Congress has specifically provided that patents are to be treated as personal property. 35 U.S.C. § 261."); *cf. Abraxis Bioscience, Inc. v. Navinta LLC,* 625 F.3d 1359, 1364 (Fed. Cir. 2010)(while, state law governs the interpretation of contracts generally, the discrete question of whether a patent assignment clause creates an automatic assignment or merely an obligation to assign in patent cases is a matter of federal law because it is intimately bound up with standing); see also *Core Optical Techs., LLC v. Nokia Corp.*, 102 F.4th 1267, 1273 (Fed. Cir. 2024).

### B. Application of Texas law requires a much different result

The District Court never reached the question of application of Texas law because, as discussed above, the District Court crafted and applied her own federal common law. As advocated below by *both* Dr. Streit and Private Identity, the District Court should have applied Texas law to whether the purported Assignment was effective. Application of Texas law yields a far different result.

Below, Private Identity asserted that pursuant to Texas law, consideration here was simply unnecessary.[2] Private Identity relied almost exclusively on cases outside

---

[2] While not part of the District Court's opinion, Private Identity had also asserted that the purported Assignment here was subject to an irrebuttable presumption because the document stated it was the product of consideration. Texas law recognizes consideration as a prerequisite to contract formation, without which a contract is null and void. *Burges v. Mosley*, 304 S.W.3d 623, 628 (Tex. App. 2010)(lack of consideration is an affirmative defense to a breach of contract claim.). Private Identity asserted, however, that under Texas law there is a presumption that when an instrument states that it is the product of consideration that there was, in fact consideration. Dr. Streit did not deny, and in fact, plead in his Amended Complaint that the purported Assignment exists. He further did not deny that the document states that it was "For good and valuable consideration, the receipt of which is hereby acknowledged…" However, Dr. Streit contends that the purported Assignment was not the product of consideration.

Private Identity asserted that the presumption created by language in the purported Assignment as proof positive of what it purports to memorialize. Private Identity ignored that in Texas such a presumption is rebuttable and a "party alleging lack of consideration has the burden of proof to rebut this presumption." *Burges v. Mosley*, 304 S.W.3d 623, 628 (Tex. App. 2010); *Mobile Equity Corp. v. Walmart Inc.*, 2022 U.S. Dist. LEXIS 162895, *8 (E.D. Tex. Aug. 23, 2022) adopted by 2022 U.S. Dist. LEXIS 162895 (E.D. Tex. Aug. 23, 2022).

of Texas to advance this argument. The only Texas case cited by Private Identity was *El Paso Healthcare Sys., LTD v. Molina Healthcare of New Mexico, Inc.*, 683 F. Supp. 2d 454, 459-60 (W.D. Tex. 2010)(see ECF No. 32-1 at pg. 10 and ECF No. 60-1 at pg. 10). However, Private Identity misplaced its reliance on *El Paso* which concerned gratuitous assignments — a theory which Private Identity expressly and repeatedly disclaimed. Moreover, the language in *El Paso* on which Private Identity relied concerned gratuitous assignments and was clearly *dicta* as the Court found that in that case there was, indeed, consideration. *Id.* ("the assignments in question here were not actually gratuitous; they were made as part of an equal, consideration-backed exchange.").

Private Identity also pointed to various secondary sources in asserting that assignments do not require consideration as well as several cases, none of which discuss Texas law, asserting that an assignment is something other than a contract so that consideration is, by definition, irrelevant, and that "Courts have repeatedly followed this principle." Appx733 Not so in Texas, and not so in the secondary sources nor the cases cited by below by Private Identity.

In addition to relying on Restatement of Contracts (Second) § 332, which, as discussed above, concerns "Revocability of Gratuitous Assignments" and, was therefore irrelevant as Private Identity expressly disavowed any such a theory, Private Identity also relied upon Farnsworth, *Contracts* § 11.3 (3d ed. 1999) and

Farnsworth, *Contracts* § 11.6 (3d ed. 1999) as support for its argument that an assignment does not require consideration. Farnsworth, *Contracts* § 11.3 (3d ed. 1999) discusses when an assignment may be effective as opposed to an attempted or purported assignment. § 11.3 provides that there must be a present intention to transfer a right without further action by the owner or the obligor. This is clearly not present here as the purported Assignment contains express terms requiring future performance of Dr. Streit. Similarly, Farnsworth, *Contracts* § 11.6 (3d ed. 1999), which Private Identity relied upon to a far greater degree than § 11.3 is even more unhelpful to Private Identity. Much like Restatement of Contracts (Second) § 332, this Honorable Court need look no further than the section's title: "Revocability of a Gratuitous Assignment." Private Identity repeatedly disavowed that the assignment at issue was gratuitous.

The case of *Minnesota Mut. Life Ins. Co. v. Anderson,* which Private Identity relied upon provides that:

> If an assignee gives value for the assignment, it is not gratuitous and is therefore not revocable. It is important to remember that an assignment is a transfer, not a contract (a promise), and to understand that whether a transferee has given value is not the same question as whether a *promisee* has given *consideration*. * * * *An assignee gives value if he takes the assignment either in exchange for something that would be consideration for a promise, or as security for or in total or partial satisfaction of a pre-existing obligation***.**

504 N.W.2d 284, 286 (Minn 1993)(emphasis added). There is no suggestion that the assignment here was given in security and as Private Identity repeatedly stated below

the purported Assignment was not signed gratuitously, so the only thing left is consideration.

The *Minnesota Mutual* Court reviewed the earlier case of *Bowen v. Willard*, 203 Minn. 289, 294, 281 N.W. 256, 259 (1938), which Private Identity also cited, explaining that:

> *Bowen* says only that 'an assignment need not * * * be made upon a consideration.' 203 Minn. at 294, 281 N.W. at 259. *Bowen* thus acknowledges the validity of gratuitous assignments but says nothing about the requirements for an assignment for value.

*Id.* 504 N.W.2d at 287. Again, there is no assertion by Private Identity that the Assignment was gratuitous.

This same point of law was discussed in *Collier v. Greenbrier Developers, LLC,* which Private Identity also relied upon. 358 S.W.3d 195 (Tenn. App. 2009). In *Collier*, the Tennessee Court of Appeals explained that while under Tennessee law an assignment is not a contract, this does not mean that the assignee need not exchange anything for it to be valid. Instead, rather than consideration, such an assignment requires either that the assignment be gratuitous — which, again, Defendant has repeatedly, expressly, and vehemently disclaimed — or there must be

value given (i.e., either consideration or something pledged as security). 358 S.W.3d at 203 (Tenn. App. 2009).[3, 4]

---

3 "Because an assignment is not a contract, the question of whether an assignee has given value is not the same question as whether a promisee has given consideration. E. Allan Farnsworth, Contracts § 11.6, p. 726 (3d ed. 1999). According to the Restatement (Second) Contracts § 332(5) (1979), an assignee gives value by taking the assignment either 'in exchange for something that would be consideration for a promise,' or 'as security for or in total or partial satisfaction of a preexisting obligation.' *If value is not given in exchange for the assignment, then the assignment is considered gratuitous.*" (emphasis added).

4 *In re Brager*, 39 B.R. 441 (Bankr. E.D. Pa. 1984), also cited below by Private Identity, was completely inapposite as it concerned the assignment of a debt and whether such assignment necessarily transferred a recorded lien. In that case, the debtors sought to avoid a debt which had been purchased and assigned by the creditor bank. The debt had been secured by a mortgage, but a judgment had entered against the debtors. The transfer did not expressly concern the lien only the debt itself. Debtors asserted that the debt was therefore unsecured. The debtors asserted that the lien was invalid because the debt was held by one party while the lien was held by another. 39 B.R. at 443-444. The Bankruptcy Court rejected this position because "[a] transfer of only the underlying debt also effects as a matter of law the conveyance of the equitable right to the accompanying security interest, notwithstanding the absence of formal assignment or delivery of the interest." *Id.* The Court further rejected the position that the transfer of the debt did not also transfer the lien because the first bank "sold the debt without the requisite intent necessary to effect an assignment of the accompanying lien" because the requisite intent was present and "intent is not necessary to assign a security interest when the parties have effectively assigned the underlying debt" *Id.* The Court reasoned that whether or not there was consideration for the assignment was rendered moot because the Court had already found that the intent and consideration to transfer the debt applied equally to the lien, so that the assignment was of the lien separate and apart from the debt itself was truly a "completed act" treating the assignment as a formality to complete the transfer of the debt and the concomitant lien so that the purchaser of the debt was to be treated as a secured party. *Id.* As there was consideration for the purchase of the debt in the *Brager*

More important than the smattering of cases from across the United States upon which Private Identity relied and the District Court ignored, in Texas:

> [a]n 'assignment' is simply a transfer of some right or interest. . . As such, *an assignment is a contract* between the assignor of a right and an assignee, who receives the authority to assert that right.

*Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 211 (Tex.App. – El Paso 2010)(citing *University of Texas Med. Branch at Galveston v. Allan*, 777 S.W.2d 450, 452-453 (Tex.App.-- Houston 1989, no writ)(emphasis added); see also *Pogo Res., LLC v. St. Paul Fire & Marine Ins. Co.*, 2022 U.S. Dist. LEXIS 12016, *12 (N.D.Tex. Jan. 24, 2022) (citing the quoted above language from *Pagosa, supra*); *Onyekwere v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 35598, *12 (N.D. Tex. Mar. 18 2014)(same); *Amaro v. US Bank Nat'l Ass'n*, 2013 U.S. Dist. LEXIS 40798, *7 (N.D.Tex. Mar. 22 2013)(same).

Private Identity's position and the District Court's decision are clearly at odds with Texas law. Dr. Streit was not provided consideration and there was no substitute for consideration provided such as gratuitous (or donative) intent — which Private Identity expressly and repeatedly disavowed.

---

case, it does not stand for the proposition advanced by the Defendant. Instead, it provides for the exact opposite, holding that substance is more important than form and if there was consideration for the purchase of a debt than the assignment of a lien does not require separate consideration which is presumed.

The District Court's opinion turns Texas law on its head. Following the District Court's logic, the mere signing and delivery of a document is sufficient to transfer patent rights. Leaving aside that this is contrary to Texas law, the District Court fails to account for such things as fraud, undue influence, or incapacity. In fact, the very case relied upon by the District Court, *Keller v. Bass Pro Shops, Inc.*, 15 F.3d 122 (8th Cir. 1994), in looking to Restatement (Second) of Contracts § 332 implicitly acknowledges that this cannot be, and is not the case because § 332 concerns gratuitous intent, meaning that there must be, at the very least, gratuitous intent. While the recitation of consideration may create a presumption in favor of Private Identity that consideration was provided, this presumption is rebuttable and was rebutted by Dr. Streit's Affidavit. Appx673

Indeed, Texas courts have held that a "recitation of consideration" in an agreement may be challenged by a party by introducing evidence showing that the stated consideration was not, in fact, given:

> Generally, a contract must be supported by consideration to be enforceable. *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 659 (Tex. 2006). "Consideration is a present exchange bargained for in return for a promise." *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991). When an instrument recites that consideration has been given, we presume that consideration to be sufficient. *McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 335 (Tex. App.—Houston [14th Dist.] 2011, no pet.) "However, parol evidence is admissible to show want or failure of consideration and establish the actual consideration given for the instrument." *Id.* (citing *DeLuca v. Munzel*, 673 S.W.2d 373, 376 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.)).

As such, Dr. Streit was entitled to an evidentiary hearing or trial to weigh the testimony and evidence.

### C. The District Court erred in holding that all of the patents concerned the same subject and derived from the same original invention, which was directly contrary to the allegations in the Amended Complaint and Dr. Streit's Affidavit

In holding that each of the fifteen (15) patents derived from the same invention, Judge Gallagher failed to provide any explanation for her decision nor any analysis of the patents themselves. She incorrectly stated that Dr. Streit's Amended Complaint "that all fifteen of the patents at issue in this case derive from the original set of inventions" citing paragraphs 28 through 38 as in the very next paragraph, 39, Plaintiff expressly alleged that they "were not nor could they have been contemplated at the time the Assignment Agreement was signed." She wholly ignored Dr. Streit's Affidavit, explaining that the inventions were different. Appx673-683 As such, this matter was in no way ripe for dismissal on 12(b)(6) grounds as there were clearly questions of fact regarding the applicability of the purported Assignment to each of the patents which were not identified in the document.[5] At the very least, Dr. Streit was entitled to an evidentiary hearing or trial

---

5 Moreover, as discussed in *Abraxis, supra,* "[w]hether an assignment of patent rights in an agreement is automatic or merely a promise to assign depends on the contractual language itself." 625 F.3d at. 1364-1365 (citing *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008)). "If the contract expressly conveys rights in future inventions, no further act is

to weigh the testimony and evidence. Thus, the District Court violated one of the central tenets in deciding the Motion to Dismiss that it must "accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Ubisoft Entm't, S.A. v. Yousician Oy*, 814 Fed. Appx588, Appx590 (Fed. Cir. 2020).

**CONCLUSION AND RELIEF SOUGHT**

For the foregoing reasons this Honorable Court should OVERRULE the District Court and REMAND this matter for an evidentiary hearing as to the enforceability of the Assignment and further for an evidentiary hearing as to whether the Assignment concerned each of the patents at issue in this matter or alternatively

---

required once an invention comes into being, and the transfer of title occurs by operation of law." *Id.* "In contrast, contracts that obligate the owner to grant rights in the future do not vest legal title to the patents in the assignee." *Id.* (citing *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841-42 (Fed. Cir. 2009)).

Here, assuming *arguendo* the validity of the purported Assignment, it provided that Dr Streit did "sell, assign and transfer . . . [his] right, title and interest" in any inventions which were "disclosed in the paper entitled 'Privacy-Enabled Biometric Search' and to any patent application relating to any matter relating to Open Inference Holdings LLC" including rights to four (4) patent applications specifically identified by application number. Appx628 In regard to other inventions, Dr. Streit would execute and sign over rights to future inventions and patent applications. (Id. at ¶ 2). Clearly, a question of fact existed as to what each of these other eleven (11) patents were covered by the purported Assignment and, additionally, if they were covered whether they were contemplated in the first or second paragraphs of the purported Assignment.

a subset of same and for such other relief as this Honorable Court deems just and proper.

Date: April 29, 2025

Respectfully Submitted,

DeCARO, DORAN, SICILIANO,
GALLAGHER & DeBLASIS, LLP

/s/ James S. Liskow
James S. Liskow, #16731
17251 Melford Boulevard
Suite 200
Bowie, Maryland 20715
Tel: (301) 352-4950
Fax: (301) 352-8691
jliskow@decarodoran.com

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

Pursuant to Federal Rule of Appellate Procedure 27(d) and 32(g), I certify the following:

1. This Brief complies with Federal Rule of Appellate Procedure 27(d)(2)(A) and contains 6,001 words excluding the accompanying documents authorized by Federal Rule of Appellate Procedure 27(a)(2)(B) and items excluded by Federal Rules of Appellate Procedure 27(d)(2) and 32(f).

2. This Brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) and has been prepared using Microsoft Word in 14-point Times New Roman font.

Date: April 29, 2025

Respectfully Submitted,

DeCARO, DORAN, SICILIANO, GALLAGHER & DeBLASIS, LLP

/s/ James S. Liskow

James S. Liskow
17251 Melford Boulevard
Suite 200
Bowie, Maryland 20715
Tel: (301) 352-4950
Fax: (301) 352-8691
jliskow@decarodoran.com