No. 2025-1433

# United States Court of Appeals for the Federal Circuit

**BRIAN STREIT,**
*Plaintiff-Appellant*

v.

**PRIVATE IDENTITY, LLC, fka Inference Holdings LLC,**
*Defendant-Appellee*

**Appeal from United States District Court for the District of Maryland, Case No. 8:23-cv-02031-SAG, Judge Stephanie A. Gallagher**

## APPELLEE PRIVATE IDENTITY, LLC'S RESPONSE BRIEF


Michael A. Albert
Eric J. Rutt
Emma L. Frank
WOLF GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
BOSTON, MA 02210
617.646.8000 PHONE
617.646.8646 FAX

*Counsel for Defendant-Appellee Private Identity, LLC*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2025-1433

**Short Case Caption** Streit v. Private Identity, LLC

**Filing Party/Entity** Private Identity, LLC, fka Inference Holdings LLC

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/21/2025

Signature: /s/ Michael Albert

Name: Michael Albert

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☑ None/Not Applicable |
| Private Identity, LLC, fka Inference Holdings LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Wolf, Greenfield & Sacks, P.C. | John W. McGrath | |
| Shulman, Rogers, Gandal, Pordy & Ecker, P.A. | Glenn C. Etelson | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

STATEMENT OF RELATED CASES ........................................................ 1

STATEMENT OF THE ISSUES ........................................................ 1

STATEMENT OF THE CASE ........................................................ 2

SUMMARY OF THE ARGUMENT ........................................................ 5

ARGUMENT ........................................................ 8

I. Appellant Lacked Standing Because His Assignment Transferred to Private Identity Whatever Rights He Might Have Possessed in the Patents-in-Suit ........................................................ 8

A. Patent Assignments Do Not Require Consideration to Be Valid Because They Are Transfers of Property, Not Contracts ........................................................ 9

1. Under Federal Common Law, an Assignment Does Not Require Consideration ........................................................ 11

2. Under Texas State Law, an Assignment Does Not Require Consideration ........................................................ 18

B. Even If Patent Assignments Did Require Consideration, Appellant's Assignment to Private Identity Would Still Be Valid and Enforceable ........................................................ 23

1. Appellant's Assignment to Private Identity Acknowledged Receipt of Consideration ........................................................ 24

2. Appellant's Assignment Was Executed under Seal Which Thereby Imported Consideration ........................................................ 26

II. The District Court Did Not Need to Hold an Evidentiary Hearing Because the Fifteen Patents-in-Suit Are All Within the Scope of Appellant's Assignment to Private Identity ........................................................ 27

A. The Four Originally-Filed Patents Are Listed Within the Scope of Appellant's Assignment ........................................................ 29

B. The Eleven Later-Filed Patents Relate to "Matter Relating to [Private Identity]" and Are Thereby Within the Scope of Appellant's Assignment ........................................................ 30

CONCLUSION ........................................................ 32

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abbott Point of Care Inc. v. Epocal, Inc.*,
666 F.3d 1299 (Fed. Cir. 2012) ....................11

*Abraxis Bioscience, Inc. v. Navinta LLC*,
625 F.3d 1359 (Fed. Cir. 2010) ....................18

*Allergan, Inc. v. Teva Pharms. USA, Inc.*,
2017 WL 11572810 (E.D. Tex. Aug. 3, 2017)....................21

*Amaro v. U.S. Bank Nat. Ass'n*,
No. 3:12-CV-3776-B, 2013 WL 1187284 (N.D. Tex. Mar. 22, 2013) ....................22

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
583 F.3d 832 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776 (2011)....................14, 27

*Beech Aircraft Corp. v. EDO Corp.*,
990 F.2d 1237 (Fed. Cir. 1993) ....................17

*Bowen v. Willard*,
203 Minn. 289 (1938) ....................20

*Burges v. Mosley*,
304 S.W.3d 623 (Tex. App. 2010)....................24

*Cascades Dev. of Minnesota, LLC v. Nat'l Specialty Ins.*,
675 F.3d 1095 (8th Cir. 2012) ....................12

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988)....................15

*Collier v. Greenbrier Devs., LLC,*
358 S.W.3d 195 (Tenn. Ct. App. 2009)....................20

*DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*,
517 F.3d 1284 (Fed. Cir. 2008) ....................27

*El Paso Healthcare Sys., LTD v. Molina Healthcare of New Mexico, Inc.*,
683 F. Supp. 2d 454 (W.D. Tex. 2010) ....................18, 19, 26

*IMATEC, Ltd. v. Apple Computer, Inc.*,
15 F. App'x 887 (Fed. Cir. 2001) ....................28, 29

*Imation Corp. v. Koninklijke Philips Elecs. N.V.*,
586 F.3d 980 (Fed. Cir. 2009) ....................................................................27

*In re Cybernetic Servs., Inc.*,
239 B.R. 917 (B.A.P. 9th Cir. 1999) ..............................................................10

*Israel Bio-Eng'g Project v. Amgen, Inc.*,
475 F.3d 1256 (Fed. Cir. 2007) ..................................................................31

*Jim Arnold Corp. v. Hydrotech Sys., Inc.*,
109 F.3d 1567 (Fed. Cir. 1997) ..................................................................15

*Keller v. Bass Pro Shops, Inc.*,
15 F.3d 122 (8th Cir. 1994) ....................................................................*passim*

*Larson v. Correct Craft, Inc.*,
569 F.3d 1319 (Fed. Cir. 2009) ..........................................................8, 15, 17

*Minnesota Mut. Life Ins. Co. v. Anderson*,
504 N.W.2d 284 (Minn. Ct. App. 1993)........................................................20

*Mobile Equity Corp. v. Walmart, Inc.,*
2022 WL 4112237 (E.D. Tex Aug. 23, 2022)..........................................24, 26

*Nebco & Assocs. v. United States*,
23 Cl. Ct. 635 (Cl. Ct. 1991)........................................................................12

*Onyekwere v. Bank of Am., N.A.*,
No. 3:13-CV-2557-B, 2014 WL 1032447 (N.D. Tex. Mar. 18, 2014) .............22

*Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*,
323 S.W.3d 203 (Tex. App. 2010)......................................................21, 22, 23

*Pogo Res., LLC v. St. Paul Fire & Marine Ins. Co.*,
2022 WL 209276 (N.D. Tex. Jan. 24, 2022) ...................................................22

*Simpson v. MBank Dallas, N.A.*,
724 S.W.2d 102 (Tex. App. 1987)..................................................................24

*Sky Techs. LLC v. SAP AG*,
576 F.3d 1374 (Fed. Cir. 2009) ..........................................................11, 12, 18

*Stolz v. Honeycutt*,
42 S.W.3d 305 (Tex. App. 2001)....................................................................25

*Univ. of Tex. Med. Branch v. Allan*,
777 S.W.2d 450 (Tex. Ct. App. 1989)....................................................6, 18, 19

*W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*,
198 F. Supp. 3d 366 (D. Del. 2016)....................................................................13

*Wallach v. Eaton Corp.*,
837 F.3d 356 (3d Cir. 2016) ........................................................................12, 17

*Westinghouse Elec. & Mfg. Co. v. Formica Insulation Co.*,
266 U.S. 342 (1924)............................................................................................9, 10

*Williams v. Hill*,
396 S.W.2d 911 (Tex. Civ. App. 1965)..............................................................25

*Wright v. Robert & St. John Motor Co.*,
122 Tex. 278 (Comm'n App. 1933) ..............................................................26, 27

**Regulations**

37 C.F.R. § 3.1 ...................................................................................................10, 11

**Rules**

Federal Rule of Civil Procedure Rule 12.............................................................4, 5

**Statutes**

35 U.S.C. § 256.........................................................................................*passim*

35 U.S.C. § 261 ...................................................................................................11, 12

**Treatises**

Restatement (Second) of Contracts § 332.........................................................*passim*

**Other Authorities**

Farnsworth, *Contracts* § 11.3 (1982).......................................................................9

Farnsworth, *Contracts* § 11.6 (3d ed. 1999) ..............................................................9

## STATEMENT OF RELATED CASES

1. No other appeal from the same proceeding in the United States District Court for the District of Maryland was previously before this Court or any other appellate court.

2. Defendant-Appellee is unaware of any cases that may directly affect or be directly affected by the court's decision in this appeal.

## STATEMENT OF THE ISSUES

1. Did the district court correctly find that the patent assignment did not require consideration to be valid and enforceable?

2. Did the district court correctly hold that Appellant lacked standing to bring a claim for correction of inventorship under 35 U.S.C. § 256 because he assigned any rights he might have had in the Patents-in-Suit[1] to Private Identity, LLC ("Private Identity")?

3. Did the district court, accepting as true the facts pleaded in Appellant's amended complaint, correctly find that Appellant's assignment to Private Identity encompassed all the Patents-in-Suit?

---

[1] The "Patents-in-Suit" are U.S. Patent Nos. 10,419,221; 10,721,070; 10,938,852; 11,122,078; 11,138,333; 11,170,084; 11,210,375; 11,265,168; 11,362,831; 11,392,802; 11,394,552; 11,489,866; 11,502,841; 11,640,452; 11,677,559.

## STATEMENT OF THE CASE

This appeal arises from the district court's dismissal, for lack of standing, of Appellant's complaint seeking to "correct" inventorship of the Patents-in-Suit to add himself as an inventor.

Private Identity is a leader in the biometric security industry and has invested significant resources into developing cutting-edge technology in this field. Appellant Brian Streit is the son of Scott Edward Streit, the sole named inventor, of the fifteen Patents-in-Suit. Appx17 at ¶ 2. Scott Streit is a member of Private Identity, (Appx19 at ¶ 9), and was the Chief Technology Officer of Private Identity from 2017 until July 26, 2023. Appellant alleged that between January 2017 and March 2018 he and his father "collaborated on inventions described and claimed" in the Patents-in-Suit. Appx19-20 at ¶ 14. Appellant also alleged that during this period he "co-authored a paper with Scott Streit, entitled 'Privacy-Enabled Biometric Search,' which is cited in the [Patents-in-Suit], and includes material that represents [Appellant's] collaboration and involvement in the technology described in the [Patents-in-Suit]." Appx21 at ¶ 19.

On April 17, 2018, Appellant assigned his entire right, title and interest in and to all patent applications relating to Open Inference Holdings LLC—which was the former name of Appellant Private Identity—and to all patents issuing from those applications, as well as to all inventions disclosed in a paper co-authored by

Scott Streit and Appellant. Appx628-629. Appellant executed the assignment in Texas (as reflected in the notarization) and provided a Texas address underneath his signature. That assignment conveys from Appellant to Private Identity:

> [M]y entire right, title and interest for the United States and all foreign countries, in and to any and all inventions and designs which are disclosed in the paper entitled "Privacy-Enabled Biometric Search" and to any patent application relating to any matter relating to Open Inference Holdings LLC, including patent applications … No. 15/914,436, 15/914,562, 15/914,942, and/or 15/914,969 … and all corresponding provisional, non-provisional, divisional, continuing, substitute, renewal, reissue and all other applications for Letters Patent ….

Appx628 at ¶ 1.

Appellant's own amended complaint states that "[a]ll of the other patents in [the Patents-in-Suit] claim priority and incorporate by reference the four patents" (Appx20-21 at ¶ 18) that issued from the four patent applications identified in the assignment, i.e., U.S. Patent Application Nos. 15/914,436, 15/914,562, 15/914,942, and/or 15/914,969 (*compare* Appx628 at ¶ 1, *with* Appx20-21 at ¶¶ 15-18). Moreover, Appellant does not dispute that each of the Patents-in-Suit relates to Private Identity's technology and includes subject matter disclosed in the paper co-authored by Scott Streit and Appellant.

Notwithstanding having assigned away his patent rights, Appellant filed a complaint on July 27, 2023, seeking to "correct inventorship" of the Patents-in-Suit under 35 U.S.C. § 256. Appx765-767 at ¶¶ 1-7. On November 21, 2023,

Appellant filed an amended complaint alleging that his assignment to Private Identity is "null and void" because Appellant "received no consideration." Appx22-23 at ¶¶ 24-26.

On December 5, 2023, Private Identity filed a motion to dismiss the amended complaint for lack of standing under Federal Rule of Civil Procedure 12(b)(1). During the briefing on that motion, Appellant submitted an affidavit in support of his opposition to Private Identity's motion and alleged additional facts regarding his assignment to Private Identity and the subject matter of the Patents-in-Suit. Appx673-705. On July 18, 2024, the district court entered a letter order requesting that the parties address whether the challenge to the amended complaint was facial or factual. Appx706-707; *see also* Appx5 ("This Court did not formally deny that motion to dismiss, but simply sent a letter to the parties to ascertain whether the case presented a facial or a factual attack on jurisdiction. [Appx706-707]. Defendant thereafter withdrew the motion to dismiss before this Court issued a ruling."). On July 31, 2024, Private Identity withdrew the Rule 12 motion and on August 22, 2024, it proceeded to answer the amended complaint.

On September 19, 2024, Private Identity filed a motion for judgment on the pleadings pursuant to Federal Rules of Civil Procedure 12(c) and 12(b)(1) raising the argument that Appellant's assignment was valid and enforceable without

consideration as a matter of law. The district court granted this motion on January 21, 2025 and dismissed Appellant's claims. Appx8.

In its order dismissing the case, the district court held that (a) federal law applies to determining whether consideration is required to effect a valid patent assignment; (b) under federal law, consideration is not a requirement for a valid and effective patent assignment; and (c) even if Texas state law were applicable, the outcome would be the same, because Texas follows the Restatement (Second) of Contracts § 332 (to be valid, an assignment requires only that it be (1) in writing, (2) signed, and (3) delivered)). Appx6-7. Accordingly, Appellant lacked standing to assert his correction of inventorship claims. Appx7. The district court also rejected Appellant's argument that his assignment governed only a subset of the Patents-in-Suit, explicitly relying on Appellant's own allegations in his amended complaint. Appx7-8. This appeal followed.

## SUMMARY OF THE ARGUMENT

The judgment of the district court should be affirmed because it properly applied federal law holding that patent assignments do not require consideration to be valid and enforceable. The district court was also correct in holding, in the alternative, that even if Texas law applied, the outcome would be the same. Therefore, regardless of whether there was or was not consideration, Appellant had

validly assigned away any patent rights he may once have had and accordingly lacked standing to seek "correction" of inventorship.

As the district court correctly held, ***Appellant's assignment is a conveyance of property, not a contract***. Appx6-7. The contract-law requirement of consideration thus does not apply. To be valid, all an ***assignment*** requires is that it be (1) in writing, (2) signed, and (3) delivered. *Keller v. Bass Pro Shops, Inc.*, 15 F.3d 122, 125 (8th Cir. 1994) (citing Restatement (Second) of Contracts § 332); *Univ. of Tex. Med. Branch v. Allan*, 777 S.W.2d 450, 453 (Tex. Ct. App. 1989) (recognizing the validity of Restatement § 332 in Texas). Nowhere in his briefing below or on appeal has Appellant cited any authority that requires a fourth element, namely consideration. That is because, while contracts (as exchanges of promises of future performance) generally require consideration to be valid, property conveyances such as patent assignments do not. In short, as the district court correctly found, regardless of whether Appellant received consideration, his assignment "constitutes an effective voluntary assignment of [Appellant's] right, title, and interest in the inventions, designs, and related patents that cannot now be set aside for lack of consideration." Appx7.

Even if patent assignments did require consideration, Appellant's assignment to Private Identity would still be valid and enforceable because he failed to meet his burden to overcome two independent presumptions of

consideration arising on the face of the assignment itself. First, the assignment recites receipt of consideration; and second, it was executed under seal, which "imports consideration" as a matter of law. Appellant failed to rebut these presumptions of consideration and therefore to demonstrate that the assignment was anything other than valid and enforceable.

Finally, no evidentiary hearing was required to determine whether Appellant's assignment encompassed all of the Patents-in-Suit because, accepting Appellant's own allegations in his amended complaint as true, the district court correctly found that "all fifteen of the patents at issue in this case derive from the original set of inventions." Appx8. Moreover, as the district court also found, the assignment broadly transferred Appellant's "right, title, and interest 'to any patent application relating to any matter relating to' [Private Identity]." Appx7 (quoting Appx628 at ¶ 1). Appellant has never addressed that provision of the assignment or attempted to rebut Private Identity's showing that this provision alone results in the assignment of all of the Patents-in-Suit. Appellant has thus waived any contrary argument. The district court thus correctly found that Appellant's assignment encompassed all fifteen of the Patents-in-Suit.

## ARGUMENT

### I. Appellant Lacked Standing Because His Assignment Transferred to Private Identity Whatever Rights He Might Have Possessed in the Patents-in-Suit.

A party who has assigned away its rights to a patent lacks standing to bring a claim for correction of inventorship. *See Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1327-28 (Fed. Cir. 2009) (vacating judgment because purported inventor had assigned patents to defendant and thus lacked constitutional standing to assert correction of inventorship claim).

Because Appellant assigned away whatever rights he might have had in the Patents-in-Suit, he "has no financial interest in the patents sufficient for him to have standing to pursue a [35 U.S.C.] § 256 claim" to correct inventorship. *Id.* at 1327 (holding alleged co-inventor has no standing where he assigned to defendant his rights in the patents-in-suit). Appellant does not (and cannot) dispute that if his assignment of the Patents-in-Suit to Private Identity was effective, then he lacks standing to bring a claim for correction of inventorship, and the district court properly dismissed his claims.

Instead, Appellant contends that his assignment to Private Identity was invalid for lack of consideration. As a matter of federal common law, however, a patent assignment does not require consideration to be valid because assignments are not contracts. The same would be true even if, as Appellant erroneously

contends, Texas common law were to apply. And even if Appellant's assignment were a contract to be construed under Texas law, it would still be valid and enforceable because it recited consideration (a recitation not rebutted by Appellant) and because it was expressly stated to be an instrument "under seal" which separately imports consideration as a matter of law.

### A. Patent Assignments Do Not Require Consideration to Be Valid Because They Are Transfers of Property, Not Contracts.

As a matter of law, written and signed patent assignments are valid and enforceable regardless of consideration. This is because ***patent assignments are not contracts—they are transfers of property***. *See* Farnsworth, *Contracts* § 11.6, p. 726 (3d ed. 1999) ("[A]n assignment is a transfer, not a contract."). As Farnsworth cautions: "It is important not to confuse an assignment, which is a present transfer, with a contract, which is a promise of future performance." Farnsworth, *Contracts* § 11.3 (1982). Under both federal common law and Texas common law, assignments are independently operative to effectuate an immediate transfer of patent ownership rights and accordingly do not require consideration.

The Supreme Court has similarly explained that a patent assignment is not a contract but a different kind of "instrument in writing." *Westinghouse Elec. & Mfg. Co. v. Formica Insulation Co.*, 266 U.S. 342, 348 (1924) ("[E]very … patent or any interest therein shall be assignable in law by an instrument in writing…"). That "instrument" is, as the Supreme Court pointed out, analogous to a deed to real

property, i.e., a present transfer or conveyance, not a promise to convey something in the future:

> It was manifestly intended by Congress to surround the conveyance of patent property with safeguards resembling those usually attaching to that of land. This court has recognized the analogy between estates in land by estoppel and the right to enjoy a patent right in the use of an article conveyed by one without authority but who acquires it by subsequent conveyance.

*Id.* at 349.

That assignments are transfers (not contracts to transfer) is also recognized in the federal regulations, *see* 37 C.F.R. § 3.1 (calling a patent assignment a "transfer" of rights in a patent), and by other courts. *See, e.g.*, *In re Cybernetic Servs., Inc.*, 239 B.R. 917, 921 (B.A.P. 9th Cir. 1999) ("Assignments are defined as ***transfers*** by a party of all or part of its right, title and interest in a patent or patent application."),[2] *aff'd* 252 F.3d 1039 (9th Cir. 2001).

Ultimately, Appellant's contention amounts to a request that this Court cast doubt on the validity of the thousands of patent assignments relied on routinely by countless technology companies, universities, and other organizations and individuals across the country, many of which use the same or similar standard conveyance language as Appellant used here ("… I, the undersigned Assignor, hereby … assign ….," (Appx628)). These assignment forms, moreover, call only

---

[2] Unless otherwise noted, all internal citations and quotations are omitted and all emphasis is added.

for the signature of the assignor, not that of any assignee or other counterparty, as would commonly be the case for a contract. Appellant never explains why there would not be a space for a second signature if the document were, as he contends, a contract rather than a conveyance.

#### 1. Under Federal Common Law, an Assignment Does Not Require Consideration.

The issue of whether consideration is required for a patent assignment (such as the one granted by Appellant) to be effective is to be resolved under federal law. "Usually, federal law is used to determine the validity and terms of an assignment, but state law controls any transfer of patent ownership by operation of law not deemed an assignment." *Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1379 (Fed. Cir. 2009).

Under federal patent law, "[a]ssignment means a ***transfer*** by a party of all or part of its right, title and interest in a patent [or] patent application …." 37 C.F.R. § 3.1; *see also Abbott Point of Care Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1302 (Fed. Cir. 2012) ("***Transfers*** of title, otherwise known as assignments, are controlled by 35 U.S.C. § 261."). And as Appellant recognizes, under federal patent law, "patents shall have the attributes of personal property." Dkt. No. 20 ("Br.") at 13 (quoting 35 U.S.C. § 261). In short, assignments are transfers (i.e., present conveyances) of property, not contracts (i.e. promises to convey property at some

future time). Accordingly, unlike contracts, they do not require consideration in order to be valid.

Indeed, all that federal law requires for an assignment to be valid is that it be: (1) in writing, (2) signed, and (3) delivered. *Keller*, 15 F.3d at 125 (citing Restatement (Second) of Contracts § 332: "A voluntary, written assignment of a chose in action is irrevocable once the instrument is signed and delivered; consequently, it cannot later be set aside by the assignor for lack of consideration. Patents are choses in action. Thus, an effective voluntary assignment of a patent need not be supported by consideration."); *see also Nebco & Assocs. v. United States*, 23 Cl. Ct. 635, 645 (Cl. Ct. 1991) (citing Restatement § 332: "An assignment of a chose in action is valid after delivery even though made without consideration."); *Wallach v. Eaton Corp.*, 837 F.3d 356, 369 (3d Cir. 2016) ("[S]o long as an assignment is written and express, it is valid under the Restatement [Section 332], even absent consideration."); *Cascades Dev. of Minnesota, LLC v. Nat'l Specialty Ins.*, 675 F.3d 1095, 1099 (8th Cir. 2012) (citing Restatement § 332: "The assignment in this case is valid, as it is in writing, signed by [assignor], and delivered to [assignee]."). Similarly, "[t]he Federal Patent Act requires that all assignments of patent interest be in writing." *Sky Techs.*, 576 F.3d at 1379 (citing 35 U.S.C. § 261).

Notably absent from those listed requirements is the provision of consideration—because an assignment is not a contract. Appellant cites no authority holding that the above list of three requirements for an assignment to be valid must somehow be expanded to require a fourth requirement (consideration).

Like the patent assignment in *Keller*, Appellant's assignment "recites that the assignors have received valuable and sufficient consideration …; it does not reflect that [Plaintiff] expected any future performance by [Defendant] in return for the assignment, nor does it reflect that [Defendant] promised anything in the way of future performance. In these circumstances, the assignment is irrevocable and cannot be set aside for lack of consideration." *Keller*, 15 F.3d at 125. Thus, "[t]he Assignment at issue in this case is clearly ***not*** a contract requiring consideration on both sides." *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, 198 F. Supp. 3d 366, 377 (D. Del. 2016). Here, as in *Gore*, "[t]he Assignment is valid as a gratuitous assignment because it was in writing, signed by [assignor], and delivered to [assignee]." *Id.* at 378. Moreover, "[e]ven if [Plaintiff] expected (and was entitled to) future performance, that future performance would not be a condition of the assignment so as to render it void in the event of nonperformance. Failure to perform would simply give rise to an action for breach." *Keller*, 15 F.3d at 125 n.9.

Under Restatement § 332, the dispositive issue regarding intent is whether "[t]he writing … fully manifest[s] an intention to make a present transfer rather than to promise or authorize a future transfer." Restatement (Second) of Contracts § 332, comment b. The Federal Circuit has held, "as a matter of federal law," that the language "I … do ***hereby*** assign … my right, title, and interest in each of the ideas, inventions and improvements" effects "a present assignment of [the assignor's] future inventions." *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841-42 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776 (2011) (internal quotation marks omitted). Appellant's assignment similarly recites "I, the undersigned Assignor, ***hereby***: Sell, assign and transfer to [Private Identity]…" Appx628. Thus, as a matter of Federal Circuit law, the Assignment unambiguously effectuates a ***present*** transfer of patent rights. *Stanford*, 583 F.3d at 841-42. No consideration was necessary to effectuate that transfer because it was not a contract (i.e. a promise of future conduct).

Appellant's arguments seeking to undercut *Keller* and the application of federal common law to the issue of consideration are unfounded.

**First**, Appellant incorrectly argues that *Keller* "should never have been decided as the Eighth Circuit was without subject matter jurisdiction" and only this Court could have decided the case. Br. at 7; *see also id.* at 10. But in fact, the Eighth Circuit's jurisdiction in *Keller* was clear. *Keller* began as a state-court

declaratory judgment action seeking to invalidate a patent assignment. The case was removed to federal court on the basis of diversity jurisdiction. 15 F.3d at 123. This Court's jurisdiction extends "only to those cases in which a well-pleaded complaint establishes either [1] that federal patent law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988). Federal patent law did not create the cause of action in *Keller* and the district court had found there was no federal question jurisdiction (i.e., there was not a substantial question of federal patent law). 15 F.3d at 123 n.2. The Eight Circuit's jurisdiction over the claim in *Keller* is consistent with this Court's precedent that if a plaintiff does not own a patent absent judicial intervention voiding a patent assignment, "federal court is not the place to seek that initial judicial intervention." *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed. Cir. 1997); *see also Larson*, 569 F.3d at 1327 (finding no standing to sue for correction of inventorship because, "[w]ithout first voiding his patent assignments, Larson has no ownership interest in the ... patents.").

**Second**, Appellant erroneously argues that *Keller* was decided only under Arkansas law. Br. at 10. *Keller* affirmed the district court on two grounds, one based on estoppel under Arkansas law, and the other "on the ground that the patent

assignment was a completed voluntary conveyance and that it therefore is not subject to attack for lack of consideration" [3] under federal common law. 15 F.3d at 124. Indeed, the *Keller* court explicitly stated that it made no decision on "the extent that state law may bear on the effect of an assignment ***that is valid as a matter of federal law***" but recognized that Arkansas law on effective assignment was identical to federal law and gave rise to the same result. *Id.* at 125.

**Third**, regardless of whether Appellant's assignment was "gratuitous," Restatement (Second) of Contracts § 332 stands for a clear proposition—assignments do not, as a matter of law, require consideration to be effective. Appellant cites to no authority imposing the requirement of consideration on the effectiveness of an assignment. That is because assignments are not contracts, and thus no exchange of consideration is needed for them to be effective.

**Fourth**, Appellant's argument that his assignment to Private Identity "by its own terms invalidated the patent [*sic*]" under 35 U.S.C. § 256 because he was not named as an inventor on the Patents-in-Suit is nonsensical. Br. at 11-12. Private Identity has always maintained that Appellant is not a co-inventor on any of the

---

[3] Appellant recognizes this holding in *Keller* but appears to argue that it should be ignored because the Eighth Circuit cited to a case regarding a mortgage and applying Nebraska law. Br. at 11. The authorities underlying the Eighth Circuit's reasoning do not bear on, let alone alter, the fact that *Keller* is indisputably about the effectiveness of a patent assignment without consideration, and applied federal common law regarding assignments to reach that conclusion.

Patents-in-Suit. *See, e.g.*, Appx799 at ¶ 22. Appellant is also incorrect that he could not have assigned his interests in any patent "without including [his] name on the patent," (Br. at 12), because "[i]t is elementary that inventorship and ownership are separate issues. … [I]nventorship is a question of who actually invented the subject matter claimed in a patent. Ownership, however, is a question of who owns legal title to the subject matter claimed in a patent, patents having the attributes of personal property." *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993). Ultimately, Appellant lacked standing to bring his claim because, having assigned to Private Identity all of his rights in the Patents-in-Suit, Appellant now lacks the "concrete financial interest" that courts have held an alleged inventor must possess in order to have Article III standing to challenge inventorship under § 256. *See Larson*, 569 F.3d at 1321. There is no support for Appellant's assertions in *Larson* or similar cases where alleged inventors lacked standing to seek correction of inventorship because they had assigned away any rights in the patents.

**Finally,** Appellant's argument that it was error for the district court to rely on *Wallach* to justify an application of federal common law because *Wallach* concerned an assignment of antitrust claims, (Br. at 12-13) rather than a patent assignment, ignores that "***federal law*** is used to determine the validity and terms of [a patent] assignment." *Sky Techs.*, 576 F.3d at 1379. Indeed, Appellant

acknowledges that "whether a patent assignment clause creates an automatic assignment or merely an obligation to assign in patent cases is a matter of federal law because it is intimately bound up with standing." Br. at 13 (discussing *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010)).

The other cases cited by Appellant to support his assertion that state law should govern all involved ***contract*** interpretation; but, as explained above, ***an assignment is not a contract***. In any event, as explained below in Section I.A.2, the outcome would not be different even if Texas state law did apply, as that law is consistent with federal law on the relevant point.

### 2. Under Texas State Law, an Assignment Does Not Require Consideration.

Appellant errs in suggesting that "[a]pplication of Texas law yields a far different result" than federal common law. Br. at 14. To the contrary, Texas courts have adopted the Restatement (Second) of Contracts § 332, under which a patent assignment does not require consideration to be valid so long as it is (1) in writing, (2) signed, and (3) delivered. Texas courts, in fact, have cited Restatement § 332 for the exact proposition at issue here, namely that "**an assignment is not void for lack of consideration**." *El Paso Healthcare Sys., LTD v. Molina Healthcare of New Mexico, Inc.*, 683 F. Supp. 2d 454, 459-60 (W.D. Tex. 2010) (citing Restatement (Second) of Contracts § 332); *see also Univ. of Tex. Med.*

*Branch*, 777 S.W.2d at 453 (recognizing the validity of Restatement § 332 in Texas).

In *El Paso*, the court rejected the proposition that an "assignment is void if without valid consideration" as an "obscure, seventy-four year old result which flatly contradicts modern contract law." 683 F. Supp. 2d at 460. "Instead, the modern view clearly articulated in Restatement § 332, the overall validity of which was recognized in *Allan*, must be given precedence." *Id.* Regardless of whether the assignment in *El Paso* was or was not for consideration, Appellant cannot escape the fact that Texas does not impose a requirement of consideration for an assignment to be valid. The very fact that under Texas law, an assignment ***can be*** "gratuitous" means that, "***as a matter of hornbook law***," an assignment ***does not need to be supported by consideration***. *El Paso*, 683 F. Supp. 2d at 459 (citing Restatement (Second) of Contracts § 332).

Appellant incorrectly contends that Private Identity "expressly disavowed" any theories regarding gratuitous assignment and that this Court should ignore the cases and sources cited by Private Identity. Br. at 15. That position mischaracterizes the record: Private Identity has consistently argued that whether an assignment was "gratuitous" or "for value" is simply irrelevant to any assessment of the validity of the assignment, as no consideration is legally necessary. *See* Appx637; Appx756. As Appellant acknowledges: "*If value is not*

*given in exchange for the assignment, then the assignment is considered gratuitous.*" Br. at 18 n.3 (quoting *Collier v. Greenbrier Devs., LLC*, 358 S.W.3d 195, 203 (Tenn. Ct. App. 2009)) (emphasis original in Brief). In other words, "gratuitous" is simply a label given to an assignment that is not for value. Thus, if Appellant received value for the patent assignment, it was an assignment for value, and if not, it was a gratuitous assignment, but ***either way it is valid so long as it was in writing, signed, and delivered***. *See* Restatement (Second) of Contracts § 332. Here, it is undisputed that the assignment was in writing and was signed and delivered. Appx7 ("The Assignment Agreement is a written document and it was signed and delivered to [Private Identity].").

Similarly, Appellant does not (and cannot) dispute that *Minnesota Mutual*[4] and *Bowen*[5] recognize that assignments are not contracts and that they can be either for value or gratuitous. Br. at 16-17. Appellant's contention that "there is no assertion by Private Identity that the Assignment was gratuitous" (Br. at 17) again misses the point—namely, that Appellant's assignment was valid ***regardless*** of whether it was for value or gratuitous.

---

[4] *Minnesota Mut. Life Ins. Co. v. Anderson*, 504 N.W.2d 284 (Minn. Ct. App. 1993).
[5] *Bowen v. Willard*, 203 Minn. 289 (1938).

Finally, the Texas cases cited by Appellant to support his assertion that the district court's opinion is "clearly at odds with Texas law" (Br. at 19) are actually entirely consistent with Farnsworth's distinction between "an assignment, which is a present transfer" and "a contract, which is a promise of future performance." Farnsworth, § 11.3.[6]

In *Pagosa*, the operative agreement was not a patent assignment at all. Rather, the "assignment" in question was a transfer of a right to sue for breach of a mineral rights contract; but more importantly, it was a contract because it expressly depended on the performance by the counterparty of certain future obligations (e.g. that the transferee would pay the transferor one third of any future recovery on the cause of action). *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 211 (Tex. App. 2010). The court's finding that the assignment in question was a contract is thus consistent with Farnsworth, the Restatement, and the cases cited by Private Identity because the agreement to assign in *Pagosa* was given in

[6] Appellant makes a passing argument that Farnsworth § 11.3 is inapplicable because "the purported Assignment contains express terms requiring future performance." Br. at 16. As Private Identity explained below, (Appx758), Appellant is confusing a commonplace "further assurances" clause with a contingency requiring future performance in order for an agreement to take effect. *See Allergan, Inc. v. Teva Pharms. USA, Inc.*, 2017 WL 11572810, at *10 (E.D. Tex. Aug. 3, 2017).

exchange for a promise of future performance by the assignee (i.e., paying the assignor a portion of any recovery). *Id.*

Here, by contrast, Appellant's assignment effected a ***present*** transfer of patent rights through use of the phrase "***hereby*** … assign" as distinct from a mere promise to assign patent rights in the future (e.g., "will assign"). Nothing in *Pagosa* contradicts Farnsworth's distinction between contracts and assignments.

Similarly, in *Pogo*, the operative document was a "PSA, Assignment, and Sale Order," which provided that "Buyer ***shall*** purchase, pay for, and accept all of Seller's right and title to, and interest in" the property. *Pogo Res., LLC v. St. Paul Fire & Marine Ins. Co.*, 2022 WL 209276, at *6 (N.D. Tex. Jan. 24, 2022)). The buyer's promise to pay for the seller's property was thus a ***promise of future performance***, i.e., a contract. Thus, the statement in *Pogo* that the agreement in question was a contract is consistent with Farnsworth's teaching.

Plaintiff's remaining Texas cases, *Onyekwere*[7] and *Amaro*,[8] involve homeowners' challenges to foreclosure proceedings. Neither has anything to do with patent assignments. Those cases also do not establish any relevant law; they

---

[7] *Onyekwere v. Bank of Am., N.A.*, No. 3:13-CV-2557-B, 2014 WL 1032447 (N.D. Tex. Mar. 18, 2014).
[8] *Amaro v. U.S. Bank Nat. Ass'n*, No. 3:12-CV-3776-B, 2013 WL 1187284 (N.D. Tex. Mar. 22, 2013).

merely cite *Pagosa* for the proposition that the agreements in question were contracts but do not disclose those agreements' provisions and do not provide any details suggesting any inconsistency with Farnsworth, the Restatement, or any cases cited by Private Identity.

### B. Even If Patent Assignments Did Require Consideration, Appellant's Assignment to Private Identity Would Still Be Valid and Enforceable.

That patent assignments are present transfers of rights, not contracts to carry out future obligations, suffices to affirm. This Court need go no further. As an alternative ground for affirmance, however, the assignment would be valid even if consideration were a requirement for a patent assignment's validity, for two reasons. First, the assignment on its face acknowledged receipt of consideration, which under Texas common law suffices absent Appellant meeting his burden to rebut that presumption—a burden Appellant has not met. Second, the assignment was made in writing and is expressly stated to be ***under seal***, which under Texas common law "imports" consideration, such that the assignment is valid and irrevocable even if made gratuitously (i.e. without consideration).

Appellant had his opportunity to rebut these presumptions in the proceedings before the district court and failed to do so. Accordingly, any such argument is waived and not preserved for appeal.

### 1. Appellant's Assignment to Private Identity Acknowledged Receipt of Consideration.

Appellant's arguments are predicated on his assertion that he received no consideration for the assignment of the Patents-in-Suit to Private Identity. Yet Appellant acknowledges that the first sentence of his assignment to Private Identity states: "***For good and valuable consideration, the receipt of which is hereby acknowledged*** …." Br. at 14 n.2 (quoting Appx628). Appellant also acknowledges that, under Texas law, the recital of consideration creates a presumption that consideration was received. Br. at 14 n.2, 20; *see also Simpson v. MBank Dallas, N.A.*, 724 S.W.2d 102, 107 (Tex. App. 1987); *Burges v. Mosley*, 304 S.W.3d 623, 628 (Tex. App. 2010) ("The existence of a written contract, however, presumes consideration for its execution."). Appellant further acknowledges that it was ***his*** burden as the "party alleging lack of consideration … to rebut this presumption." Br. at 14 n.2 (quoting *Burges*, 304 S.W.3d at 628). Indeed, in *Mobile Equity Corp. v. Walmart, Inc.*, a case cited by Appellant, the assignment contained language identical to the patent assignment here (i.e., "For good and valuable consideration, the receipt of which is hereby acknowledged"). 2022 WL 4112237, at *3 (E.D. Tex Aug. 23, 2022). Applying Texas law, the court in that case ***rejected*** the lack-of-consideration argument because the party challenging the patent assignment had failed to meet its burden to rebut the presumption of consideration. *Id.* As Private Identity explained in

briefing on this issue before the district court, Appellant here has similarly failed to rebut this presumption.

Below, Appellant's only "evidence" that his assignment lacked consideration were boilerplate allegations in his amended complaint (Appx22-23 at ¶¶ 24-26) and his assertion in his affidavit that he "received no consideration of any kind or quality from Private Identity for signing the purported Assignment." Appx675 at ¶ 8. These conclusory assertions are insufficient. To rebut the legal presumption of consideration, "it was incumbent upon [Appellant] to present evidence legally admissible on the question of lack of consideration." *Williams v. Hill*, 396 S.W.2d 911, 913 (Tex. Civ. App. 1965). As the court held in *Williams*, this means that bare assertions and "statements in [an] affidavit that 'no consideration existed or passed to me' … [that] are clearly recitations of legal conclusions and not statements of fact" will fail to overcome the presumption of consideration. *Id.* Here, Appellant fails to point to any consideration (whether in the form of monetary payment or otherwise) that the Assignment required be provided to him but that he did not receive. Appellant's conclusory assertions of lack of consideration thus fail, because he does not identify anything within the "four corners of the document" that sets out something that he was meant to receive, but allegedly was not provided to him. *Stolz v. Honeycutt*, 42 S.W.3d 305, 313 (Tex. App. 2001) (rejecting failure of consideration defense based on check

returned for insufficient funds when signed release did not "reference any payment as a part of consideration or performance"). Appellant having failed to rebut the presumption of consideration, "the assignment agreement is presumed to have consideration, and thus to be valid." *Mobile Equity*, 2022 WL 4112237, at *3.

### 2. Appellant's Assignment Was Executed under Seal Which Thereby Imported Consideration.

In addition to the recitation of consideration received by Appellant, the assignment was also executed under seal, which itself imports consideration as a matter of law. Appellant's assignment to Private Identity expressly states that it is executed "under seal." Appx629. When an assignment is executed under seal, this "imports a consideration" under Texas common law because "a consideration is implied, in the solemnity of the instrument." *Wright v. Robert & St. John Motor Co.*, 122 Tex. 278, 282-83 (Comm'n App. 1933). Because "the necessity for a seal has been done away with … all such contracts now imply a consideration." *Id.* at 283. Moreover, if Appellant's assignment was gratuitous (i.e., without consideration, as he claims), then such an assignment "is ***irrevocable*** if … the assignment is in a writing either signed or under seal." Restatement (Second) of Contracts § 332 (1981); *see also El Paso*, 683 F. Supp. 2d at 460 (citing Restatement § 332 and explaining that an assignment without consideration may be revoked only "***absent*** certain formalities in its granting," one of which is execution under seal).

Again, it was Appellant's burden to "prove a want of consideration" given that the assignment was executed under seal. *Wright*, 122 Tex. at 283. And, again, Appellant failed to meet this burden for the same reasons set forth in Section I.B.1 above—he has identified no compensation or other consideration that was called for within the four corners of the assignment document that he failed to receive. The assignment was thus valid and enforceable.

## II. The District Court Did Not Need to Hold an Evidentiary Hearing Because the Fifteen Patents-in-Suit Are All Within the Scope of Appellant's Assignment to Private Identity.

Appellant objects that the district court failed to hold an "evidentiary hearing" about which of the patents fell within the scope of Appellant's assignment to Private Identity because some of the patents had not yet been issued. No such evidentiary hearing was needed. This Court has explained that an assignment that includes the "language of 'do hereby assign' effect[s] a present assignment of [an inventor's] future inventions," such that "no further act would be required once an invention came into being." *Stanford*, 583 F.3d at 842; *see also DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008); *Imation Corp. v. Koninklijke Philips Elecs. N.V.*, 586 F.3d 980, 986 (Fed. Cir. 2009) (finding the phrase "agrees to grant and does hereby grant" was a "*present* grant … of rights to existing and future patents" (emphasis in original)); *IMATEC, Ltd. v. Apple Computer, Inc.*, 15 F. App'x 887, 893 (Fed. Cir. 2001) (finding the

phrase "hereby do assign" was "a present assignment of all inventions he would make").

Appellant acknowledges that when an assignment "conveys rights in future inventions, no further act is required once an invention comes into being, and the transfer of title occurs by operation of law." Br. at 21-22 n.5 (quoting *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010)).

Appellant's assignment of the Patents-in-Suit to Private Identity uses the language of a present assignment (i.e., "***hereby*** sell, assign and transfer") that automatically transfers future patent rights once they come into existence. Appx628. The assignment thus affected a present, automatic assignment of Appellant's alleged inventions—regardless of whether they existed in the form of patents at the time of the assignment or in the future.

Appellant nonetheless persists with his argument from below that the Patents-in-Suit "were not nor could they have been contemplated at the time the Assignment Agreement was signed." Br. at 21. Under the law of this Circuit, however, it is irrelevant whether Appellant could have "contemplated" the technical scope of future inventions at the time of assignment. Br. at 4. Indeed, by their very nature, the scope of future inventions commonly are not known at the time of an assignment; however, that uncertainty does not prevent an inventor from effecting "a present assignment of all inventions he would make" in the future.

*IMATEC*, 15 F. App'x at 893 (affirming judgment that assignment had transferred future inventions). By executing the assignment, Appellant assigned to Private Identity any and all rights he may have had in the Patents-in-Suit.

Appellant further contends that the district court erred by finding that his assignment to Private Identity encompassed all fifteen of the Patents-in-Suit. These patents can be divided into two categories. The first category concerns the four patents that Private Identity filed in March 2018,[9] before Plaintiff executed the Assignment in April 2018. Those are addressed in Section II.A below. The second category concerns the eleven patents that Private Identity filed after the April 2018 assignment, i.e., "the patents which were not identified in the [assignment] document" (Br. at 21), which are the focus of Appellant's argument regarding the scope of the assignment (Br. at 21-22 n.5). Those are addressed in Section II.B below. As explained below, all the Patents-in-Suit are subject to Appellant's assignment to Private Identity.

### A. The Four Originally-Filed Patents Are Listed Within the Scope of Appellant's Assignment.

The Assignment expressly identifies four patent applications filed on March 7, 2018, which issued as four of the fifteen Patents-in-Suit. Appx628 at ¶ 1.

---

[9] Appx628 at ¶ 1 (reciting U.S. Pat. App. Nos. 15/914,436, 15/914,562, 15/914,942, and 15/914,969, which issued as U.S. Pat. Nos. 10,419,221, 11,392,802, 10,721,070, and 11,138,333).

Appellant did not dispute below, and does not dispute now on appeal, that his assignment encompasses these four originally-filed patents. *See* Appx667 (acknowledging that "the purported Assignment concerned … the four [patents] that are expressly identified in [it]"); Br. at 21 (arguing that there were "questions of fact regarding the applicability of the purported Assignment to each of the patents which were not identified in the document"). There is thus no dispute that Plaintiff's assignment encompasses at least the four originally-filed patents.

### B. The Eleven Later-Filed Patents Relate to "Matter Relating to [Private Identity]" and Are Thereby Within the Scope of Appellant's Assignment.

Appellant's assignment to Private Identity also covers the eleven later-filed Patents-in-Suit. Appellant has focused on a provision of the assignment that covers "any and all inventions and designs which are disclosed in the paper entitled 'Privacy-Enabled Biometric Search.'" Appx628 at ¶ 1; *see* Br. at 6. Appellant devoted most of his affidavit below to addressing this technical issue, i.e., whether that paper discusses the subject matter of the Patents-in-Suit, (*see* Appx676-683 at ¶¶ 17-26), and now obliquely raises the issue on appeal as justification for his request for remand for an evidentiary hearing. Br. at 21. But the district court did not need to address these arguments, nor is remand required for the district court to do so, because Appellant glosses over a different, and dispositive, provision of the assignment that expressly assigns to Private Identity "any patent application

relating to any matter relating to [Private Identity]." Br. at 22 n.5 (quoting Appx628). Appellant has ***never addressed that clause*** nor disputed that each of the Patents-in-Suit falls within that clause, despite the issue being raised by Private Identity below and relied upon by the district court to find that the assignment encompassed all of the Patents-in-Suit. Appx640; Appx657-671; Appx701-702; Appx7 ("The Assignment Agreement pertains to the 'inventions and designs,' not just specific patents, and broadly transfers [Appellant's] right, title, and interest 'to any patent application relating to any matter relating to' [Private Identity]."). Any such argument regarding this provision ***is therefore waived*** by Appellant. *See Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1265 (Fed. Cir. 2007) ("This court has declined to consider arguments that were not presented to the district court.").

Moreover, despite Appellant's allegation that the district court failed to accept his complaint's allegations as true (Br. at 22), the district court did no such thing—Appellant's own pleading, taken as true, actually ***establishes*** that all the Patents-in-Suit are within the assignment's scope. Appellant's first amended complaint alleged that "[a]ll of the other patents in [the Patents-in-Suit] claim priority and incorporate by reference the four patents identified" in the

Assignment. Appx20-21 at ¶ 18.[10] In addition to assigning "all inventions and designs" in the four earlier-filed patents, Appellant's assignment transfers to Private Identity "all corresponding provisional, non-provisional, divisional, continuing, substitute, renewal, and reissue and all other applications … on any of the inventions and designs." Appx628 at ¶ 1. Treating the first amended complaint's allegations as true (as a Rule 12(c) motion requires and as the district court did), the eleven later-filed Patents-in-Suit claim priority and incorporate by reference the four patents identified in the assignment, and are thus "corresponding" applications that thus expressly fall within the scope of the assignment.

In sum, the district court correctly found that Appellant had assigned his rights in all fifteen of the Patents-in-Suit to Private Identity.

## CONCLUSION

The decision of the district court should be affirmed.

---

[10] In the order granting Private Identity's motion, the district court relied on paragraphs 28-38 of Appellant's amended complaint to find that "Plaintiff clearly alleges, in the Amended Complaint, that all fifteen of the patents at issue in this case derive from the original set of inventions." Appx8. Paragraphs 28-38 of the amended complaint identify the priority chains of each of the patents-in-suit, i.e., adding detail to the pleading in paragraph 18 that "[a]ll of the other patents in [the Patents-in-Suit] claim priority and incorporate by reference the four patents identified." Appx20-21 at ¶ 18, Appx23-26 at ¶¶ 28-38.

Respectfully submitted,

Date: May 21, 2025

*<u>/s/ Michael A. Albert</u>*

Michael A. Albert
Eric J. Rutt
Emma L. Frank
WOLF GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
BOSTON, MA 02210
617.646.8000 PHONE
617.646.8646 FAX

*Counsel for Defendant-Appellee Private Identity, LLC*

## CERTIFICATE OF COMPLIANCE

I hereby certify under Fed. R. App. P. 32(g)(1) that this brief complies with the type-volume requirements of Fed. Cir. R. 32(b)(1) because it contains **7,065** words, as determined by the automated count feature of Microsoft Word, and excluding the parts of the motion exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2); and that this motion complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5)-(6).

Dated: May 21, 2025

*/s/ Michael A. Albert*

Michael A. Albert
WOLF GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
BOSTON, MA 02210

*Counsel for Defendant-Appellee Private Identity, LLC*

## CERTIFICATE OF SERVICE AND FILING

I hereby certify that on May 21, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of such filing to all registered users.

Dated: May 21, 2025

*/s/ Michael A. Albert*
Michael A. Albert
WOLF GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
BOSTON, MA 02210
PHONE: 617.646.8000

*Counsel for Defendant-Appellee Private Identity, LLC*