**2025-1433**

---

# United States Court of Appeals
# for the Federal Circuit

---

BRIAN STREIT,

Plaintiff-Appellant,

v.

PRIVATE IDENTITY, LLC fka Inference Holdings LLC,

Defendant-Appellee.

---

Appeal from the United States District Court for the District of Maryland in 8:23-cv-02031-SAG,
Judge Stephanie A. Gallagher

---

**REPLY BRIEF OF PLAINTIFF-APPELLANT BRIAN STREIT**

JAMES S. LISKOW
DeCARO, DORAN, SICILIANO,
GALLAGHER & DeBLASIS, LLP
17251 Melford Boulevard, Suite 200
Bowie, Maryland 20715
Tel: (301) 352-4950
Fax: (301) 352-8691
jliskow@decarodoran.com
*Counsel for Appellant Brian Streit*

June 11, 2025

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

ARGUMENT ........ 1

CONCLUSION AND RELIEF SOUGHT ........ 13

CERTIFICATE OF COMPLIANCE ........ 15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abraxis Bioscience, Inc. v. Navinta LLC,*
625 F.3d 1359 (Fed. Cir. 2010) ....................................................1, 4, 8

*Amaro v. US Bank Nat'l Ass'n*,
2013 U.S. Dist. LEXIS 40798 (N.D.Tex. Mar. 22 2013).................. 10

*Bowen v. Willard*,
203 Minn. 289 (1938) .......................................................................10

*Burges v. Mosley*,
304 S.W.3d 623 (Tex. App. 2010) ................................................10, 11

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800; 809; 108 S. Ct. 2166; 100 L. Ed. 2d 811 (1988)........4, 6

*DDB Technologies v. MLB Advanced Media*,
517 F.3d 1284 (Fed. Cir. 2008) ...........................................................7

*El Paso Healthcare Sys., LTD v. Molina Healthcare of New Mexico, Inc.*,
683 F. Supp. 2d 454 (W.D. Tex. 2010)..............................................1, 9

*Jim Arnold Corp. v. Hydrotech Sys*.,
109 F.3d 1567, (Fed. Cir. 1997) ........................................................ 6

*Keller v. Bass Pro Shops, Inc.*,
15 F.3d 122 (8th Cir. 1994) .................................................... 4, 5, 6, 9

*Larson v. Correct Craft*, *Inc.*,
569 F.3d 1319 (Fed. Cir. 2009) .................................................. 1, 7, 8

*Minnesota Mut. Life Ins. Co. v. Anderson,*
504 N.W.2d 284 (Minn 1993) ......................................................10, 11

*Mobile Equity Corp. v. Walmart Inc.*,
2022 U.S. Dist. LEXIS 162895 (E.D. Tex. Aug. 23, 2022)..........11, 12

*Onyekwere v. Bank of Am., N.A.*,
2014 U.S. Dist. LEXIS 35598 (N.D. Tex. Mar. 18 2014)......................9

*Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*,
323 S.W.3d 203 (Tex.App. – El Paso 2010) .........................................9

*Pogo Res., LLC v. St. Paul Fire & Marine Ins. Co.*,
2022 U.S. Dist. LEXIS 12016 (N.D.Tex. Jan. 24, 2022)..................... 9

*Pratt v. Paris Gas Light & Coke Co.*,
168 U.S. 255, 42 L. Ed. 458, 18 S. Ct. 62 (1897)................................ 6

*Randell v. Robinson*,
172 S.W. 735 (Tex. Civ. App. 1914) ................................................. 13

*Schwendimann v. Arkwright Advanced Coating*, Inc.,
959 F.3d 1065 (Fed. Cir. 2020) ........................................................... 6

*Short v. Price*,
17 Tex. 397 (1856) ....................................................................8, 9, 13

*Shukh v. Seagate Tech*., LLC,
803 F.3d 659 (2015) ..........................................................................8, 9

*University of Texas Med. Branch at Galveston v. Allan*,
777 S.W.2d 450 (Tex. App. 1989)........................................................ 9

*Unthank v. Rippstein*,
386 S.W.2d 134 (Tex. 1964)............................................................... 13

*Wright v. Robert & St. John Motor Co.,*
122 Tex. 278 (1933) ......................................................................... 13

**Statutes**

35 U.S.C. § 256 .......... 6
35 U.S.C. § 261 .......... 5

**Other Authorities**

Farnsworth, *Contracts* § 11.3 (3d ed. 1999) .......... 11

THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, 881 (3d ed. 1999) .......... 12

## ARGUMENT

In its Response Brief, Private Identity asserts that Dr. Streit lacked standing to assert his claims because he assigned away his rights to the patents-in-suit, relying on *Larson v. Correct Craft, Inc.*, 569 F.3d 1319 (Fed. Cir. 2009). Private Identity and the District Court below read the purported Assignment far too broadly and in a manner contrary to this Honorable Court's decision in *Abraxis Bioscience, Inc. v. Navinta LLC,* 625 F.3d 1359 (Fed. Cir. 2010) as, in regard to eleven of the patents-in-suit, the Assignment would require Dr. Streit to take some further action to assign patent applications. Private Identity ignores the plain language of the Assignment and simply lumps these later filed patents with the original patents. As such, Dr. Streit has not assigned away all of his rights to the patents-in-suit and has suffered a cognizable injury.

Further, the purported Assignment should have been interpreted under Texas law. Doing so yields a far different result as Texas law requires assignment to be supported by consideration *or its equivalent*. Private Identity below expressly disclaimed any assertion that the purported Assignment was the product of gratuitous intent, insisting that it was the product of consideration. As such, neither consideration *or its equivalent* was present.

### A. Private Identity wholly ignores the inventions which were included in the later-filed patents and simply lumps them with the original patents

In asserting that the purported Assignment covered each of the patents-in-suit, Private Identity points to the language in the First Amended Complaint that "[a]ll of the other patents in [the Patents-in-Suit] claim priority and incorporate by reference the four patents identified." This is a recitation of the patent applications, not the a description of the inventions themselves. That Private Identity's patent attorneys chose to prosecute the later patents applications as continuations of the original four patents does not make them part and parcel of the same inventions. Dr. Streit's First Amended Complaint, taken as true, does not and cannot establish that the patents-in-suit were within the purported Assignment's scope as the First Amended Complaint expressly alleges the converse. Appx26 at ¶ 39.

In further support of its contention that the purported Assignment covered each of the patents-in-suit, Private Identity also asserts that the language in the purported Assignment that it applied to "*any patent* application relating to any matter relating to [Private Identity]." (emphasis added). It is entirely unclear how the District Court could determine what the parties meant by "any matter relating to [Private Identity]" without an evidentiary hearing. Further, language in the purported Assignment provides that Dr. Streit assigned his

> . . . entire right, title and, interest for the United States and all foreign countries in and to any and all inventions and designs **which are disclosed in the paper** entitled 'Privacy-Enabled Biometric Search' and to **any patent application relating to any matter relating to [Private Identity]**, **including the patent applications for United States Letters Patent filed in the United States Patent and Trademark Office on March 7, 2018** under No. 151914,436, 15/914,562.151914,942, and/or 151914,969 bearing Attorney Docket No. 00403.70000USOO, and entitled SYSTEMS AND METHODS FOR PRIVACY-ENABLED BIOMETRIC PROCESSING, . . .

(Emphasis added). Nothing in the above-quoted language refers to future inventions. Instead, the language referring to "any patent application relating to any matter relating to [Private Identity]" clearly references then-existent patent applications.

Moreover, in advancing this argument Private Identity ignores the plain meaning of the sentence it partially quotes, which refers to "any patent application", not ideas or inventions. At the time the purported Assignment was signed the latter-filed patent applications had not been filed. As such, there was and could be nothing to assign. Neither Dr. Streit nor Private Identity had prepared or filed any such applications. The all-encompassing manner in which Private Identity reads the purported Assignment on its own terms could not apply to the later filed applications.

Assuming *arguendo* that the purported Assignment was meant to apply to some action in the future, the purported Assignment does not "expressly convey[] rights in future inventions" such that "no further act is required once an invention comes into being, and the transfer of title occurs by operation of law." To the contrary, in order for Dr. Streit to "grant rights in the future" he would necessarily

have to assign future patent applications such that the purported Assignment did "not vest legal title to the patents in the assignee." *Abraxis Bioscience, Inc. v. Navinta LLC,* 625 F.3d 1359, 1364-1365 (Fed. Cir. 2010)(citing *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841-42 (Fed. Cir. 2009)). As such, Private Identity is incorrect in its reading of the purported Assignment and its reach and, further, Dr. Streit has suffered a cognizable injury.[1]

### B. Private Identity's own arguments that *Keller* created a federal common law over assignments reflects that the Eighth Circuit lacked subject matter jurisdiction to decide the matter

In asserting that the purported Assignment was effective, Private Identity relies wholly on *Keller v. Bass Pro Shops, Inc.*, 15 F.3d 122 (8th Cir. 1994). As argued in Dr. Streit's Opening Brief, *Keller* not only was wrongly decided, it should have never been decided as the Eighth Circuit was without subject matter jurisdiction. Private Identity argues that federal patent law did not create the cause of action in *Keller* so that resolution of the case did not necessarily depend on resolution of a substantial question of patent law, citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800; 809; 108 S. Ct. 2166; 100 L. Ed. 2d 811 (1988). Private Identity points to a footnote in *Keller* stating that although the federal

---

[1] Private Identity asserts that Dr. Streit did not raise these arguments in responding to the Motion for Judgment on the Pleadings below. This is untrue. Dr. Streit clearly asserted that the purported Assignment did not contemplate the latter-filed patent applications and asserted that the was entitled to a trial on the issue. APPX667; APPX736.

magistrate judge had found that there was no federal question jurisdiction but the parties were diverse the court had "no occasion to consider whether the Magistrate Judge was correct in finding a lack of federal question jurisdiction in this case involving the validity of the assignment of a patent." 15 F.3d 122, 123, n.2. In the same breath, however, Private Identity asserts that *Keller* created a federal common law precedent applicable to all assignments of patents regardless of state law. Private Identity makes this argument despite the obvious failure of the purported Assignment here to comply with 35 U.S.C. § 261 as such statute would not permit an inventor to assign a patent, patent application or an interest in the same without including his or her name on the patent or patent application. In other words, Private Identity asserts that *Keller* created a federal common law applicable to patents regardless of statutory dictate, but that the case did not decide a substantial question of patent law.

Much like the District Court below, Private Identity reads the *Keller* decision as creating a federal common law standard for assignment of patent rights, treating them as federal property, in conflict with 35 U.S.C. § 261 (". . .patents shall have the attributes of personal property."). Such a decision is clearly a substantial question of federal patent law. Dr. Streit contends that *Keller* was decided under Arkansas law and the language attempting to create or discuss a nationwide standard for assignments of patents was *dicta*. However, if the construction laid down by the

District Court and advocated here by Private Identity is correct, then clearly *Keller* was a matter "arising under" federal patent law as some right, title or interest under federal patent laws was "defeated by one construction, or sustained by the opposite construction of these laws.'" *Christianson*, supra, 486 U.S. at 807-808 (citing *Pratt v. Paris Gas Light & Coke Co.*, 168 U.S. 255, 259, 42 L. Ed. 458, 18 S. Ct. 62 (1897).

Private Identity also cites this Honorable Court's decision in *Jim Arnold Corp. v. Hydrotech Sys*., 109 F.3d 1567, 1572 (Fed. Cir. 1997). However, that decision clearly cuts against Private Identity's position that *Keller* is binding insofar as Private Identity advocates a federal common law standard for patent assignments as this Court explained that:

> It may seem strange at first blush that the question of whether a patent is valid and infringed ordinarily is one for federal courts, while the question of who owns the patent rights and on what terms typically is a question exclusively for state courts.

*Id.* Here, what is at issue is whether Dr. Streit was an inventor of the patents-in-suit and whether he assigned those rights. Clearly, the District Court had exclusive jurisdiction as does this Honorable Court to decide this appeal. However, Texas law, not the Eighth Circuit's attempted creation of a federal common law concerning the assignability of patents, controls. *Schwendimann v. Arkwright Advanced Coating*, Inc., 959 F.3d 1065, 1075 (Fed. Cir. 2020).[2]

---

2 "Finally, despite the dissent's arguments otherwise, our precedent does not suggest that in the context of agreements assigning existing patents, federal

### C. Dr. Streit has standing to assert his claims

Private Identity asserts that Dr. Streit lacks standing to sue, citing *Larson v. Correct Craft, Inc.*, 569 F.3d 1319 (Fed. Cir. 2009). In *Larson*, the Plaintiff never sought to correct the inventorship of the patent at issue but instead sought a declaratory judgment pursuant to Florida law in state court and the matter was removed. 569 F.3d at 1321. On appeal this Court interpreted the claim as one brought pursuant to 35 U.S.C. § 256. However, this Honorable Court held that the Plaintiff lacked standing because he had suffered no injury. In *Larson,* this Honorable Court held that the Plaintiff would first have to succeed on his state law claims and obtain recission of the patent assignment before enjoying any financial reward.

Here, as discussed above, Dr. Streit contends that he did not assign away all of his patent rights and that Private Identity and the District Court read the purported Assignment far too broadly. The District Court made no effort to examine each of the patents to determine whether they were contemplated by the purported Assignment. Moreover, as discussed above, the reading advocated by Private

---

law governs the interpretation of these contracts. We recognize that, in the context of employment agreements assigning rights to future inventions, our decision in *DDB Technologies v. MLB Advanced Media*, 517 F.3d 1284 (Fed. Cir. 2008) established an exception to the general rule that state law governs the interpretation of assignment employment agreements. We have not held that such an exception should be extended to agreements assigning existing patents, especially where those assignments occur outside of the employment context."

Identity violates the clear holding of *Abraxis Bioscience, supra,* that if an assignment requires a party to "grant rights in the future" than legal title has not vested. Instead, the District Court assumed that all of the patents were contemplated at the time Dr. Streit signed the purported Assignment, dismissing the matter in spite of allegations in the First Amended Complaint that various inventions "were not nor could they have been contemplated at the time the Assignment Agreement was signed, so that even if such Assignment Agreement was valid (which it is not), the inventions for which said patent applications and amendments to the original patent applications exceeded the scope of such document." Appx26. As such, unlike in *Larson,* Dr. Streit clearly has standing because he has not assigned all of his rights to the patents away—the document was open to another construction which, as discussed above, was consistent with this Court's precedent and the plain language of the document itself.

Moreover, as discussed in his First Amended Complaint and in his Affidavit, Dr. Streit had only recently left academia and had written papers on the subject, and, as such, unlike in *Larson*, correcting the patents clearly provides reputational benefit. Appx20, Appx675, Appx666. *Shukh v. Seagate Tech*., LLC, 803 F.3d 659, 663 (2015) (a reputational injury can give rise to Article III standing).

Further, here there was diversity among the parties as Plaintiff is a citizen of Colorado and Private Identity, LLC, a Delaware limited liability company was

owned by Maryland residents. Appx19. As such, the District Court was empowered to decide Dr. Streit's state law claims concerning the validity of the purported Assignment separate and apart from deciding inventorship.

### D. Pursuant to Texas law, the purported Assignment must have been supported by consideration or its equivalent

Private Identity misstates what is at issue in regard to the purported Assignment itself. Private Identity contends that Dr. Streit advances an argument that to be effective an assignment requires consideration. This is incorrect. As stated right in the Statement of Question Presented in Dr. Streit's Opening Brief, it is his contention that an assignment, under Texas law, requires either consideration or its equivalent—its potential equivalent here being gratuitous intent. Private Identity vehemently denied below that the purported Assignment here was the product of gratuitous intent. As such, the only choice left is consideration which was clearly lacking.

Unlike what Private Identity believes is a recitation of federal common law in *Keller*, in Texas "an assignment is a contract" *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 211 (Tex.App. – El Paso 2010)(citing *University of Texas Med. Branch at Galveston v. Allan*, 777 S.W.2d 450, 452-453 (Tex.App.--Houston 1989, no writ)(emphasis added); see also *Pogo Res., LLC v. St. Paul Fire & Marine Ins. Co.*, 2022 U.S. Dist. LEXIS 12016, *12 (N.D.Tex. Jan. 24, 2022) (citing the quoted above language from *Pagosa, supra*); *Onyekwere v. Bank of Am.,*

*N.A.*, 2014 U.S. Dist. LEXIS 35598, *12 (N.D. Tex. Mar. 18 2014)(same); *Amaro v. US Bank Nat'l Ass'n*, 2013 U.S. Dist. LEXIS 40798, *7 (N.D.Tex. Mar. 22 2013)(same). Texas law recognizes consideration as a prerequisite to contract formation, without which a contract is null and void. *Burges v. Mosley*, 304 S.W.3d 623, 628 (Tex. App. 2010)(lack of consideration is an affirmative defense to a breach of contract claim.).

Private Identity relies solely on *El Paso Healthcare Sys., LTD v. Molina Healthcare of New Mexico, Inc.*, 683 F. Supp. 2d 454, 459-60 (W.D. Tex. 2010). What Private Identity misses is that *El Paso* concerned gratuitous assignments. Private Identity denies that it expressly disavowed that the purported Assignment here was gratuitous—a position belied by the record. Appx697 ("Donative Intent Is Irrelevant Because *the Parties Agree That Plaintiff's Assignment Was Not Gratuitous*". . . "Plaintiff's arguments regarding 'donative intent' are irrelevant *because the parties agree the assignment was not gratuitous*.")(emphasis added). As such, "because the parties agree the assignment was not gratuitous" the purported Assignment had to be supported by consideration because its equivalent was not present.

Private Identity asserts that Dr. Streit cannot dispute that *Minnesota Mut. Life Ins. Co. v. Anderson,* 504 N.W.2d 284, 286 (Minn 1993) and *Bowen v. Willard*, 203 Minn. 289, 294, 281 N.W. 256, 259 (1938), neither of which are relevant to Texas

law, recognize that assignments are not contracts and that they can be either for value or gratuitous. Here, again, despite its protestations here, Private Identity expressly asserted below that the purported Assignment was not gratuitous. It never defines what "value" it provided for the purported Assignment which the Minnesota cases it relies upon define as "[a]n assignee gives value if he takes the assignment either in exchange for something that would be consideration for a promise, or as security for or in total or partial satisfaction of a pre-existing obligation." *Minnesota Mut. Life Ins. Co., supra,* 504 N.W.2d at 286, citing Farnsworth *Contracts* § 11.3 (3d ed. 1999). As the purported Assignment was not gratuitous (per Private Identity's arguments below), and it was not offered as security or satisfaction of an obligation, per the very cases Private Identity relies upon "value" is "something that would be consideration for a promise."

Private Identity also asserted below and asserts here now that as the purported Assignment itself recited that consideration was given so that consideration is presumed. Accepting Private Identity's assertion that the language in the purported Assignment created a presumption of consideration by stating that it was the product of such, contrary to Private Identity's arguments, that presumption is rebuttable. *Burges v. Mosley*, 304 S.W.3d 623, 628 (Tex. App. 2010)("party alleging lack of consideration has the burden of proof to rebut this presumption."); *Mobile Equity Corp. v. Walmart Inc.*, 2022 U.S. Dist. LEXIS 162895, *8 (E.D. Tex. Aug. 23, 2022)

adopted by 2022 U.S. Dist. LEXIS 162895 (E.D. Tex. Aug. 23, 2022). Dr. Streit provided a sworn Affidavit that there was no consideration, carrying his burden to rebut the presumption. He not only testified that he received no consideration, but he fully discussed the circumstances under which he signed the document.

Private Identity asserts that because the purported Assignment states that was signed under seal that consideration is "import[ed]" under Texas law which Private Identity seems to believe means that document creates an irrebuttable presumption "such that the assignment is valid and irrevocable even if made gratuitously (i.e. without consideration)." In addition to bringing goods in from a foreign county, to import means "[t]o carry or hold the meaning of; signify; *a high inflation rate importing hard times for the consumer*" or to "imply." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, 881, 3 and 4 (4th. Ed. 2000). In Texas, importing consideration to a document "under seal" does not mean anything other than there is a presumption of consideration—importing consideration is not a *substitute* for consideration nor does importing consideration cause an irrebuttable presumption of consideration rendering all questions in regard to consideration moot. To the contrary, the Texas Supreme Court has explained:

> It is evident from our discussion of the first question certified that we hold it was not necessary for the appellant to plead a consideration for the simple written contract sued on. If the contract imports a consideration, the pleading of the contract by appellee was all that was necessary to plead consideration. The burden then rested upon the

> appellant to plead under oath, and prove a want of consideration. Art. 2010, Subd. 10, R.C.S., 1925.

*Wright v. Robert & St. John Motor Co.,* 122 Tex. 278, 283 (1933).[3] Here, Dr. Streit has done exactly that as he has plead and has stated under oath that there was no consideration for the purported Assignment Agreement.

Private Identity's argument unsupported by Texas law as the instant case seeks equitable relief, not money damages. As explained by Texas Court of Appeals sitting in Texarkana:

> But it may be said that this is a sealed instrument, and that a seal of itself imports a consideration. This may be regarded as an established doctrine in courts of law, but in equity, where the suit is not for damages, but for specific execution, no additional force is given to the agreement, because it is evidenced by an instrument under seal. * * * A valuable consideration is requisite. Where this is recited, its existence will be *prima facie* presumed; but where it is not expressed in the agreement, or admitted by the pleadings, proof of its existence must be adduced by the plaintiff."

*Randell v. Robinson*, 172 S.W. 735, 736, (Tex. App.—Texarkana 1914)(citing *Short v. Price*, 17 Tex. 397 (1856)).

## CONCLUSION AND RELIEF SOUGHT

---

[3] The Texas Supreme Court explained in *Unthank v. Rippstein,* 386 S.W.2d 134, 137-138 (Tex. 1964), that in 1858 the Texas Legislature enacted legislation that made it so that "Every contract in writing hereafter made shall be held to import a consideration in the same manner and as fully as sealed instruments have heretofore done." As such, in Texas there is no difference between contracts which are signed under seal and those that are not. In both instances, consideration is presumed and the party challenging consideration has the burden of showing otherwise.

For the foregoing reasons this Honorable Court should OVERRULE the District Court and REMAND this matter for an evidentiary hearing as to the enforceability of the Assignment and further for an evidentiary hearing as to whether the Assignment concerned each of the patents at issue in this matter or alternatively a subset of same and for such other relief as this Honorable Court deems just and proper.

Date: June 10, 2025

Respectfully Submitted,

DeCARO, DORAN, SICILIANO,
GALLAGHER & DeBLASIS, LLP

/s/ James S. Liskow
James S. Liskow, #16731
17251 Melford Boulevard
Suite 200
Bowie, Maryland 20715
Tel: (301) 352-4950
Fax: (301) 352-8691
jliskow@decarodoran.com

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

Pursuant to Federal Rule of Appellate Procedure 27(d) and 32(g), I certify the following:

1. This Brief complies with Federal Rule of Appellate Procedure 27(d)(2)(A) and contains 3,389 words excluding the accompanying documents authorized by Federal Rule of Appellate Procedure 27(a)(2)(B) and items excluded by Federal Rules of Appellate Procedure 27(d)(2) and 32(f).

2. This Brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) and has been prepared using Microsoft Word in 14-point Times New Roman font.

Date: June 11, 2025

Respectfully Submitted,

DeCARO, DORAN, SICILIANO,
GALLAGHER & DeBLASIS, LLP

/s/ James S. Liskow
James S. Liskow
17251 Melford Boulevard
Suite 200
Bowie, Maryland 20715
Tel: (301) 352-4950
Fax: (301) 352-8691
jliskow@decarodoran.com